**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Baltazar Estrada CASTRO,**
**Defendant-Appellant.**

**No. 79–5460**
**Summary Calendar.\***

United States Court of Appeals, Fifth Circuit.

July 7, 1980.
Rehearing Denied Aug. 21, 1980.

Lauro Benavides, Laredo, Tex. (Court-appointed), for defendant-appellant.

\* Fed.R.App.P. 34(a); 5th Cir. R. 18.

128

John M. Potter, James R. Gough, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before HILL, GARZA and THOMAS A. CLARK, Circuit Judges.

GARZA, Circuit Judge:

On June 10, 1979, Appellant, Baltazar Estrada Castro, was one of many illegal alien federal prisoners at the Webb County Detention Center in Laredo, Texas. At noon on that day, Deputy Sheriff Ramon Garza was within the detention center compound and approached the barracks where Castro was located for the purpose of locking-in the prisoners after their noon meal. As Garza neared the door, Castro handed Garza a letter, but instead of giving the letter to Garza, Castro grabbed Garza, pushed him inside the barracks, took the keys from Garza, ordered the other seventy to eighty inmates to tie-up Garza, and then proceeded to the door and said, "vamanos" [1] to the other inmates.

After having witnessed Garza being pulled into the barracks, Deputy Hector Gonzalez proceeded to assist. He was greeted at the door by Castro, who possessed a large rock in hand, and was told, "Get yourself inside if you don't want us to hurt you. Don't give us any problems." Deputy Gonzalez complied with this advice and joined Deputy Garza. Within a few minutes two other detention officers found themselves in the same situation keeping company with officers Garza and Gonzalez. By this time, several inmates possessed rocks and advised the guards not to resist. Fortunately, no firearms were present within the barracks or compound.

In the following minutes, the sets of keys secured from the guards had been given to other inmates and, at this point, Castro directed that all of the barracks be opened and to let everybody out. He stated that it was time for justice to be done and that everybody was going to leave.

As a result of the opening of the barracks, thirteen prisoners escaped. Some of them climbed over the compound fence and others proceeded through the then opened compound gate. Three of these prisoners were recaptured and their escape constituted the three count indictment against Castro charging him with aiding and assisting the escape of the three prisoners contrary to 18 U.S.C. § 752(a).[2]

At a trial before a jury, there was no direct evidence presented that Castro unlocked the compound gate. Additionally, all three recaptured prisoners testified that they did not know Castro; that they had made no arrangements or plans to escape either with Castro or others; and that they escaped because the opportunity presented itself and not because Castro had done anything to specifically aid them in an escape attempt.

In his defense, Castro testified that he was a 30 year old Mexican national with less than a first grade education; that he had spent most of his life in rural Mexico on farms; and that he was living and working in the northern United States for five years prior to being arrested and imprisoned as an illegal alien. He explained that his only purpose in his actions on June 10, 1979 was

1. Spanish for "Let's go!".

2. 18 U.S.C. § 752(a) provides:
   Instigating or assisting escape
   (a) Whoever rescues or attempts to rescue or instigates, aids or assists the escape . ., of any person arrested upon a warrant or other process issued under any law of the United States, or committed to the custody of the Attorney General or to any institution or facility by his direction, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both; or, if the custody or confinement is for extradition or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined not more than $1,000 or imprisoned not more than one year, or both.

to allow prisoners to have a demonstration protesting the miserable living conditions within the compound. It is undisputed that Castro made no attempt to escape.

On rebuttal, in order to disprove Castro's demonstration theory of defense, the government elicited testimony from one of the recaptured prisoners which associated Castro with circulation of a rather ambiguous petition calling for aid from the Mexican Consul. The prisoner testified in vague terms that this petition was part of an escape plan being devised by Castro. The three recaptured prisoners which testified against Castro had pled guilty to escape charges but had not yet been sentenced at the time of their testimony.

The jury found Castro guilty on all three counts and Castro was sentenced to 20 months on each count to be served concurrently. On appeal, Castro questions the sufficiency of the evidence to support his convictions. Viewing the evidence in the light most favorable to the government and taking all reasonable inferences and credibility choices in favor of the jury verdict, was the evidence sufficient to show that Castro wilfully and knowingly aided and assisted the escape of each of the three recaptured prisoners?

### TANTO PECA EL QUE MATA LA VACA COMO EL QUE LE DETIENE LA PATA.[3]

■ Both Appellant and the government argue that the culpability of "aiding and assisting" escape, under 18 U.S.C. § 752(a), is governed by the same principles as those of 18 U.S.C. § 2,[4] the aiding and abetting statute. We agree and hold that, for purposes of proof, the requirements for guilt of "aiding and assisting" under § 752(a) are the same as those for "aiding and abetting" under § 2.

■ Pursuant to these requirements, Castro argues, as in aiding and abetting cases, that his "mere presence" at the scene is not enough and that the government had the burden to show that he knowingly associated himself with and participated in the criminal venture in a manner designed to accomplish the escape of the other inmates. Castro does not specifically point out the supposed insufficiency of the government's evidence as it relates to the abovementioned requirement, but he implicitly argues that the government failed to prove his intention of aiding the escape in light of his testimony that he only intended to have a demonstration and that he had no intention of aiding or assisting the escape of the three recaptured prisoners. It may well be, that, if the government's case had only shown Castro's instigation or involvement in a demonstration and a subsequent escape of other inmates due to inattentiveness or distraction of the guards, the facts and inferences to be drawn from those facts would not support a conviction for wilfully aiding and assisting the escape of those prisoners. However, the government's evidence here shows much more than "mere presence". The facts are that Castro grabbed Deputy Garza, took his keys, ordered that he be tied-up, and exclaimed that he and the occupants were leaving. In addition, Deputy Garza and other guards were detained by threats of violence and their keys were taken all due to the initial efforts of Castro. Furthermore, some evidence was presented linking Castro with a prior plan to escape. Castro's argument, that the government failed to prove his intent and purpose to aid an escape, must fail.

---

**3.** Old Mexican folksaying, roughly translated as, "He who holds the cow's leg is just as guilty as the one who actually kills the cow."

**4.** 18 U.S.C. § 2 provides:
(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

Direct proof of intention to aid in crime is not necessary and may be inferred if the defendant is substantially involved in the chain of events leading to it. The law books are full of murder convictions wherein the defendant points a gun, pulls the trigger and later claims no intent to kill the victim. The jury was presented both direct and circumstantial evidence which would support the government's version of Castro's intent and it was within their province to choose which story to believe.

Nor was it necessary for the government to prove that Castro specifically intended the escape of those particular inmates which escaped and were recaptured. It is no defense that an arsonist, charged with murder by arson, does not know the identity of every patron of the theatre into which he throws a firebomb, nor is it a defense here that Castro did not know the identity of each prisoner which would escape. Castro's efforts created a standing invitation to any prisoner who would rather be on the outside than on the inside. After Castro intentionally helped create an exit for the other prisoners, the jury was entitled to find that Castro knew that other prisoners would take advantage of the opportunity. It was the jury's function to determine Castro's intent and given our standard of review we cannot disturb their findings.

AFFIRMED.