939 F.2d 191
 UNITED STATES of America, Plaintiff-Appellee,
v.
James Randolph RAYNOR, a/k/a Randy, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Harvey Bartlett RAYNOR, a/k/a Bart, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dana Anthony HUMBARGER, Defendant-Appellant.
 Nos. 90-5008, 90-5032 and 90-5042.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 8, 1991.
Decided July 11, 1991.
As Amended Aug. 6, 1991.
 
 Vernon F. Daughtridge, Wilson, N.C., for appellant J.R. Raynor.
 William Woodward Webb, Broughton, Wilkins & Webb, P.A., Raleigh, N.C., for appellant Humbarger.
 Vicki S. Marani, U.S. Dept. of Justice, Washington, D.C., argued (Margaret P. Currin, U.S. Atty., R. Daniel Boyce, Asst. U.S. Atty., Raleigh, N.C., on brief), for plaintiff-appellee.
 Wayne Eads, Raleigh, N.C., for appellant H.B. Raynor.
 Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and SPENCER, District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 NIEMEYER, Circuit Judge:
 
 
 1
 Bart Raynor, his younger brother, Randy Raynor, and Dana Humbarger were charged in 17 counts with various drug and related fire-arms offenses arising from their participation in a cocaine distribution ring. Bart Raynor pled guilty to one drug conspiracy count and two counts for using or carrying a firearm during and in relation to a drug-trafficking offense. He was sentenced to 292 months of imprisonment for the drug conspiracy count; a mandatory, consecutive 60 months for the first firearms count; and a mandatory, consecutive 240 months for the second firearms count--for a total of 592 months. Randy Raynor pled guilty to one drug count and one firearms count and was sentenced to 292 months for the drug count plus 60 months for the firearms count. Dana Humbarger likewise pled guilty to one drug count and one firearms count and was sentenced to 124 months for the drug count plus 60 months for the firearms count. All three defendants challenge their sentences on appeal.
 
 
 2
 Bart Raynor contends that his sentence on the second firearms count cannot be enhanced to a 240-month mandatory sentence under 18 U.S.C. Sec. 924(c)(1) because of his plea to the first firearms count when both counts are in the same indictment. He also contends that a prior state offense, which was characterized by state law as a misdemeanor, cannot be used to classify him as a career offender, and that the government abused its discretion in refusing to file a motion for a downward departure under U.S.S.G. Sec. 5K1.1.
 
 
 3
 Randy Raynor contends that a prior state conviction for "breaking and entering" is not a "crime of violence" and therefore should not have been considered in classifying him as a career offender.
 
 
 4
 Dana Humbarger's appeal, which also raises issues about his sentencing, was filed approximately two and one-half months after entry of judgment, and the government has argued that because the appeal was untimely, we have no jurisdiction to hear it.
 
 
 5
 For the reasons that follow, we affirm the sentences of Bart and Randy Raynor, and refuse to consider the merits of Humbarger's appeal because it was filed untimely.
 
 CASE NO. 90-5032: BART RAYNOR
 
 6
 * Bart Raynor's convictions for the two firearms violations arise from his use of firearms during and in relation to two separate drug transactions, one on March 15 and the other on April 27, 1989. He was charged for each in separate counts. When sentencing him, the district judge applied the provisions of 18 U.S.C. Sec. 924(c)(1) to sentence Raynor to a mandatory five-year sentence for the first firearms count and a mandatory twenty-year sentence for the second, both to run consecutively. Raynor argues that the second firearms count should not be enhanced by the sentence on the first when both are in the same indictment.
 
 
 7
 While this court has not yet addressed this issue, the Eleventh Circuit decided the issue in United States v. Rawlings, 821 F.2d 1543 (11th Cir.), cert. denied, 484 U.S. 979, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987). Rawlings was convicted for two separate bank robberies and for use of a firearm in connection with each. Even though the offenses were charged in four counts contained in the same indictment, the court held that Rawlings' second offense for a firearms violation triggered the enhancement provisions of Sec. 924(c). The court rejected Rawlings' argument that the enhancement provision applies only to a defendant who has earlier been charged, convicted and sentenced under a different indictment.
 
 
 8
 The Rawlings case has been followed by the Sixth, Seventh and Eighth Circuits. See United States v. Nabors, 901 F.2d 1351, 1358 (6th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990); United States v. Bennett, 908 F.2d 189, 194 (7th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990); United States v. Foote, 898 F.2d 659, 668 (8th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 112, 112 L.Ed.2d 81 (1990). We now join those circuits in reaching the same result.
 
 
 9
 The applicable provisions of 18 U.S.C. Sec. 924(c)(1) provide:
 
 
 10
 Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years.... In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years ....
 
 
 11
 (Emphasis added.) The plain meaning of the statute supports the conclusion that a conviction on a second firearms count, even though charged in the same indictment as the first, gives rise to the enhanced sentence. The statute directs enhancement for a "second or subsequent conviction." The second conviction is the one that follows the first, either in time or in a number sequence, and the subsequent conviction is any that follows the second, either in time or in a number sequence. The enhancement that is mandated by the statute does not depend on satisfying conditions that the second or subsequent conviction be by reason of a different indictment, or that the sentence be imposed on the first conviction before the enhancement can apply to the second, or that the defendant have served the sentence imposed on the first. To construe the statute with such conditions would interject terms not included, and surely not intended, by Congress. For example, to require separate indictments would have no purpose other than to require the government to perform the meaningless ministerial function of typing and presenting two indictments, instead of one, to the grand jury. As the court in Rawlings observed, "We do not think Congress intended the enhanced penalty for a repeat offender of Sec. 924(c) to hinge on the machinations of the prosecutor." 821 F.2d at 1546. To require a separate sentencing on the first conviction before sentencing on the second would likewise add a meaningless burden and cause undue delay. And to construe the statute to require that the defendant complete his sentence on the first before becoming subject to the enhancement provisions for the second would immunize the defendant from sentencing enhancement for all firearms offenses committed before the defendant was indicted, tried, convicted and sentenced for the first. To include by implication any of these conditions would result in our rewriting the statute, a task not committed to the judiciary.
 
 
 12
 Bart Raynor argues nevertheless that in reading 18 U.S.C. Sec. 924(c)(1) we should imply the requirement that before he can be convicted of a second offense, the first must become final. He points to 21 U.S.C. Sec. 962 (providing enhancement for "second or subsequent" convictions under statutes prohibiting importation and exportation of controlled substances), which uses the same enhancing language for a "second or subsequent conviction," but which goes on to say:
 
 
 13
 For purposes of this section, a person shall be considered convicted of a second or subsequent offense if, prior to the commission of such offense, one or more prior convictions of him for a felony ... have become final.
 
 
 14
 21 U.S.C. Sec. 962(b) (emphasis added). The distinction in the language contained in 21 U.S.C. Sec. 962(b) undercuts Raynor's argument that "second or subsequent" conviction has the same meaning in 18 U.S.C. Sec. 924(c)(1). Section 962(b), which specifically limits enhancement for a second conviction to situations where the first has become final, restricts the application of the definition to Sec. 962 by introducing it with the limitation "[f]or purposes of this section." Congress could have included the same definitional language in Sec. 924(c)(1) if it meant the language there to have the same meaning as that in Sec. 962(b). Its failure to do so leaves the distinction between the two statutes, with Sec. 924(c)(1) applying to broader circumstances.
 
 
 15
 He also urges that when he is charged for both firearms offenses in a single indictment, he is not given the opportunity to learn from his first offense or to rehabilitate himself, which he argues is the general purpose of recidivist statutes. Although the recidivist statutes to which he refers impose enhancement penalties typically for convictions that are subsequent in time, see, e.g., N.C.Gen.Stat. Sec. 14-7.1 (1990); Md.Crim.Law Code Ann., Art. 27, Sec. 643B(c) (1987), the statute here makes no distinction between second in time or second in a number sequence, revealing the strong public policy of the statute. Our interpretation is consistent with the clear intent of Sec. 924(c) to deter the use of firearms in the commission of crimes and to increase the cost of committing a second offense. The mandatory aspect of the sentences and the enhancement provisions in connection with a second offense reveal the strong policy of encouraging would-be criminals to leave their handguns at home. See Rawlings, 821 F.2d at 1546.
 
 
 16
 The fact remains that twice, and on separate occasions, Bart Raynor used a handgun during and in relation to the commission of a felony drug offense. The language and the policy of the statute requires that the second offense, even if charged in the same indictment as the first, be punished by a mandatory twenty-year sentence.
 
 II
 
 17
 In finding that Bart Raynor was convicted of two prior felonies as required to become a career offender under U.S.S.G. Sec. 4B1.1, the district judge relied on a prior North Carolina conviction that is characterized by state law as a misdemeanor. In 1983 Raynor was convicted of assaulting a law enforcement officer. Although North Carolina law specifies a penalty for the offense of up to two years imprisonment, Raynor was sentenced to one year of unsupervised probation and fined $25. He argues that the district court should have been permitted to accept North Carolina's characterization of this offense as a misdemeanor and therefore not have been compelled to find Raynor a career offender.
 
 
 18
 A career offender is a defendant, at least 18 years of age, who is convicted of a felony that is a crime of violence or drug offense and who has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. Sec. 4B1.1 Application Note 3 to U.S.S.G. Sec. 4B1.2 defines a prior felony conviction to mean
 
 
 19
 a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed.
 
 
 20
 (Emphasis added.) Although North Carolina law characterizes this prior offense as a misdemeanor, the Sentencing Guidelines classify the offense as a felony for purposes of federal law. The district court properly classified Bart Raynor as a career offender for purposes of federal sentencing. See United States v. Pinckney, 938 F.2d 519 (4th Cir.1991).
 
 III
 
 21
 Finally, Bart Raynor contends that the government abused its discretion by refusing to file a motion for a downward departure pursuant to U.S.S.G. Sec. 5K1.1 for providing substantial assistance. Raynor recognizes that a downward departure based on substantial assistance must begin with a motion by the government. See United States v. Francois, 889 F.2d 1341, 1343 (4th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1822, 108 L.Ed.2d 951 (1990).
 
 
 22
 Although Bart Raynor pled guilty pursuant to a plea agreement, the only response to any cooperation by Raynor required of the government by the agreement was that the government bring the facts about his cooperation to the attention of the court at sentencing. The agreement provided, "The government, however, is not promising to move for a departure pursuant to Title 18, United States Code, Sec. 3553 or United States Sentencing Commission Guidelines Manual, Sec. 5K1.1." Despite the absence of any agreement by the government to make a motion for a downward departure, Raynor nevertheless argues that the discretion of the government is not completely unbridled and that a court may have the power to inquire into the United States Attorney's reason for not filing the motion. He relies on the decision of United States v. Justice, 877 F.2d 664 (8th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 375, 107 L.Ed.2d 360 (1989), which states that in an appropriate case, a departure under U.S.S.G. Sec. 5K1.1 may be ordered "notwithstanding the government's refusal to motion the sentencing court if the defendant can establish the fact of his substantial assistance." Id. at 668-69.
 
 
 23
 We have chosen not to follow Justice. See United States v. Wade, 936 F.2d 169 (4th Cir.1991). We pointed out in Wade that when a defendant is able to negotiate a plea agreement that includes the government's agreement to file a motion for downward departure under U.S.S.G. Sec. 5K1.1, the defendant obtains rights to require the government to fulfill its promise. Id. at 173. Absent an agreement, however, the government alone has the right to decide, in its discretion, whether to file a motion for a downward departure based on the substantial assistance of the defendant. Moreover, the defendant may not inquire into the government's reasons and motives if the government does not make the motion. Id. at 172.
 
 
 24
 In this case Bart Raynor negotiated a plea agreement in which the government did not promise to file a motion for a downward departure because of his substantial assistance. In these circumstances the district court properly refused to pursue an inquiry of the government about its reasons or motives for not filing the motion.
 
 CASE NO. 90-5008: RANDY RAYNOR
 
 25
 Randy Raynor also challenges the district court's classification of him as a career offender under U.S.S.G. Sec. 4B1.1. He argues that his prior conviction in Johnston County, North Carolina, for breaking and entering does not constitute a "crime of violence" as defined by Sec. 4B1.2 and therefore cannot serve as one of the two predicate felony convictions for career offender status.
 
 
 26
 In 1986 Randy Raynor was indicted for breaking and entering a building "occupied by Vallie Stephenson used as a residence" and stole furniture and appliances belonging to her valued at $2175. Although Raynor pled guilty to the charge, he contended at sentencing in this case that the building in fact was the former residence of Vallie Stephenson and that at the time of the breaking and entering it was unoccupied because she was residing at a rest home. Raynor argued that these facts did not amount to the "burglary of a dwelling" so as to constitute a crime of violence as defined by U.S.S.G. Sec. 4B1.2.
 
 
 27
 Rejecting Randy Raynor's argument, the district court found:
 
 
 28
 The nature and function of the structure was for use as a residence, that it had been devoted to that use historically, meaning prior to the time of the breaking and entering, and that it was capable of that use at the time, and that there was no other use to which it was devoted, that it was situated in such a place that it was regularly looked after by a relative of the owner or last occupant of it. And although it was not then occupied, it was capable of being used as a residence. And it should be considered as a residence for the purposes of this hearing.
 
 
 29
 To be classified as a career offender under U.S.S.G. Sec. 4B1.1, the defendant must have two prior felony convictions of either "a crime of violence or a controlled substance offense." At the time of the offenses in this case, U.S.S.G. Sec. 4B1.2 adopted the definition of a crime of violence from 18 U.S.C. Sec. 16. Explaining further, former Application Note 1* to U.S.S.G. Sec. 4B1.2 provided:
 
 
 30
 "Crime of violence" is defined in 18 U.S.C. Sec. 16 to mean an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or any other offense that is a felony and that by its nature involves a substantial risk that physical force against the person or property of another may be used in committing the offense.
 
 
 31
 * * * * * *
 
 
 32
 Conviction for burglary of a dwelling would be covered; conviction for burglary of other structures would not be covered.
 
 
 33
 (Emphasis added.)
 
 
 34
 Relying on the underscored portion of this definition, Randy Raynor argues that his prior offense did not constitute burglary at common law or under North Carolina statutory law and that the building he broke into was not a dwelling. He also relies on our decision in United States v. Talbott, 902 F.2d 1129, 1133 (4th Cir.1990) (burglary and breaking and entering convictions involving commercial structures, rather than residences, are not viewed as "crimes of violence" for determining career offender status).
 
 
 35
 Even if Randy Raynor's prior offense was not burglary under common law or North Carolina statutory law, that fact would not necessarily lead to a finding that his prior offense was not a crime of violence under federal law. For purposes of federal sentencing, a crime of violence by definition includes one that involves a substantial risk that physical force against the person or property of another may be used in committing the offense. There is little doubt that the building which Raynor broke into was a residence and was used for no other purpose. There was no evidence to suggest that at the time of the break-in, it was not currently being occupied. Although it was true that Vallie Stephenson was at a rest home, there was no evidence of when she or someone else might return. The house was being looked after by her grandson, who in fact came upon Raynor while he was hauling away the furnishings and appliances. From Raynor's perspective, the risk in this case to person or property was no different than had the owner been away momentarily to the store. The 1986 North Carolina indictment to which Raynor pled guilty charged that "the building was occupied by Vallie Stephenson as a residence," and the district court in this case was not clearly erroneous in finding that the "nature and function of the structure was for use as a residence ... and there was no other use to which it was devoted."
 
 
 36
 We conclude that the breaking and entering in this factual context constituted a crime of violence as used in U.S.S.G. Sec. 4B1.2, and the district court did not err in relying on the 1986 breaking and entering conviction of Randy Raynor for purposes of classifying him as a career offender.
 
 
 37
 Randy Raynor's reliance on Talbott does not advance his position because there we concluded that the breaking and entering was of a commercial building, as distinguished from a dwelling.
 
 CASE NO. 90-5042: DANA HUMBARGER
 
 38
 In his appeal, Dana Humbarger seeks to review the government's decision not to file a motion for a downward departure under U.S.S.G. Sec. 5K1.1 and the district court's finding that he obstructed justice. The government contends that we have no jurisdiction to consider these issues because Humbarger noticed his appeal over two and one-half months after the entry of judgment.
 
 
 39
 Humbarger was sentenced and judgment was entered on January 24, 1989. On April 16, he wrote a letter to the district judge captioned "Notice of Appeal," in which he stated:
 
 
 40
 Sir on January 24, 1990 your court sentenced me to 15 years and 4 months. I was involved in the Raynor case. My name is Dana Anthony Humbarger.
 
 
 41
 On January 26, 1990 I requested my attorney, Douglas P. Connors, to start proceedings to appeal my sentence. He refused, and stated to me that the government would or could sue him if he pursued such actions. I personally feel betrayed by him now.
 
 
 42
 In response to that letter, the clerk of the district court wrote Humbarger, advising him that his time for appeal had expired and that he would need to obtain an extension of time. The clerk also advised Humbarger to make his request in writing, "indicating why you have this request." On April 27, Humbarger filed a paper entitled "Motion to File an Out of Time Appeal," but in the motion he gave no reasons for the motion. He simply stated he was appealing. On May 4, 1990, the district judge denied his motion for the extension of time.
 
 
 43
 Rule 4(b), F.R.A.P., provides that an appeal shall be taken within ten days of the entry of judgment, and "[u]pon a showing of excusable neglect the district court may, before or after the time has expired ... extend the time for filing a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision." Both the motion filed on April 27 and the letter of April 16 captioned "Notice of Appeal" were filed beyond the time that could have been allowed by the granting of an extension in compliance with the rule (i.e., more than 40 days after the judgment). We have held that Rule 4(b) is mandatory and jurisdictional, see United States v. Schuchardt, 685 F.2d 901, 902 (4th Cir.1982), and we therefore decline to consider the issues raised by Humbarger.
 
 
 44
 For the reasons given, the sentences of Randy Raynor (Case No. 90-5008), Bart Raynor (90-5032), and Dana Humbarger (90-5042) are affirmed.
 
 
 45
 AFFIRMED.
 
 
 
 *
 Application Note 1 was amended, effective November 1, 1989. The offenses which are the subject of this appeal occurred prior to that date