981 F.2d 1252
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Jason Keith WALKER, Defendant-Appellant.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Larry Baxter STALLINGS, Defendant-Appellant.
 Nos. 92-5159, 92-5160.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 30, 1992
Decided: December 16, 1992
 
 Appeals from the United States District Court for the Middle District of North Carolina, at Durham. Norwood Carlton Tilley, Jr., District Judge. (CR-91-214-D, CR-91-215-D)
 ARGUED: Michael W. Patrick, Haywood, Denny, Miller, Johnson, Sessons & Patrick, Chapel Hill, North Carolina, for Appellant Stallings; Louis Carr Allen, III, Floyd, Allen & Jacobs, Greensboro, North Carolina, for Appellant Walker.
 Robert Holt Edmunds, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.
 ON BRIEF: Lisa B. Boggs, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 Affirmed.
 Before PHILLIPS, WILKINSON, and LUTTIG, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 On August 16 and September 19, 1991, an NCNB National Bank in Durham, North Carolina was robbed. Each robbery led to a separate three-count indictment against Jason Keith Walker and Larry Baxter Stallings, charging them with bank robbery, armed bank robbery, and using a firearm during a crime of violence. 18 U.S.C. §§ 2113(a), 2113(d), and 924(c)(1). After their consolidated trial, Stallings was convicted on all six counts, while Walker was convicted only on the three counts stemming from the second robbery. Both defendants appeal various issues relating to their convictions, and Stallings additionally challenges one aspect of his sentencing. We affirm.
 
 I.
 
 2
 On August 16 and September 19, 1991, the North Duke Street branch of the NCNB National Bank in Durham, North Carolina was robbed. In both incidents, a man wearing a dark, visored motorcycle helmet entered the bank, brandished a pistol and threatened violence, and robbed the same teller. At the appellants' trial, the teller and other bank employees testified that, because of similarities in voice and mannerisms, they believed that the same man committed both crimes. J.A. at 58-59, 68, 77-78, 126-27. After each robbery, witnesses saw the perpetrator exit the bank, jump on a "ninja-style" motorcycle driven by another individual, and ride off.
 
 
 3
 After the September robbery, a city maintenance supervisor followed the fleeing motorcyclists. From a distance, the supervisor saw the motorcyclists speak with the driver of an automobile and then drive off. The police eventually stopped the automobile and apprehended the driver, Brian Marks. As part of a plea agreement, Marks cooperated with federal prosecutors by testifying against Stallings and Walker. Marks told the jury that the appellants had recruited him to assist in the September robbery. Stallings was to rob the bank, Walker would drive the getaway motorcycle, and Marks would meet them outside of town. At that point, Stallings would get in Marks' car, Walker would drive the motorcycle to the Palm Park Apartments, Marks would pick him up, and the three would complete their escape. Id. at 179-82.
 
 
 4
 After the September robbery, Walker's motorcycle, which met the description of the getaway vehicle, was found at the Palm Park Apartments. Several witnesses identified the motorcycle as one they associated with the appellants. Two of the witnesses, for example, had seen the appellants driving or riding the vehicle between August 15 and September 19, 1991. Id. at 152, 295-96, 185, 309-10.
 
 
 5
 On September 13, 1991, a few days before the second robbery, Walker was stopped by a police officer while driving. Walker was accompanied by Stallings, and the two were found to be in possession of a shotgun, 27 1/2 "hits" of LSD, and $2,690 in cash. At trial, over the appellants' objections, the government sought to introduce evidence of the possession of the money. After the district court ruled that the evidence was admissible, the parties entered into a stipulation stating only that the appellants were found in possession of $2,690 on September 13, 1991. Id. at 44, 302-03.
 
 
 6
 During trial, the appellants sought to admit expert testimony by Special Agent Albert Koehler of the Federal Bureau of Investigation regarding the use of "switch cars" by bank robbers, i.e., the practice of abandoning one getaway vehicle for another in order to throw off pursuit. The district court refused to let the jury hear the testimony, finding it irrelevant. Id. at 352-54, 359-61.
 
 
 7
 On December 5, 1991, the jury found appellant Stallings guilty on all counts. He was sentenced to a term of imprisonment of seventyone months on the two consolidated armed bank robbery charges, five years consecutive for the use of a firearm in the first robbery, and twenty years consecutive to all other sentences for the use of a firearm in the second robbery. 18 U.S.C. §§ 2113(a), 2113(d), 924(c)(1). The jury could not reach a decision regarding appellant Walker's involvement in the August robbery, and the government eventually dismissed the charges resulting from this crime. The jury did, however, find Walker guilty of all three counts stemming from the September robbery, and he was sentenced to seventy-seven months of imprisonment for armed bank robbery and five years consecutive for using a firearm during a robbery.
 
 II.
 A.
 
 8
 On appeal, Walker and Stallings first contend that the district court abused its discretion by admitting evidence of the large sum of cash found in their possession on September 13, 1992. They argue that the evidence had little if any probative value and was unduly prejudicial and misleading to the jury. The simple explanation for the money, appellants assert, was that they were selling LSD, but that they could not tell this to the jury for fear they would be prejudiced by an admission of criminal wrongdoing completely unconnected with the case being tried.
 
 
 9
 This claim lacks merit. Obviously, evidence of the possession of a great deal of cash near the time of the first robbery, even if the money was not specifically identified as that which was stolen, is relevant to the question of whether the appellants committed the crime.[1] It is true that the evidence of the cash forced the appellants to make a choice: either argue to the jury that the money was the proceeds of drug dealing, rather than bank robbing, or, as they eventually chose to do, suppress the evidence of their other criminal behavior and let the jury speculate as to the origin of the money. The decision may have been a difficult one, but as this court has noted in analogous circumstances, "[n]othing in the Rules of Evidence or any other source is intended to relieve criminal defendants from difficult strategic decisions." United States v. Allen, 787 F.2d 933, 937 (4th Cir. 1986).[2] Walker and Stallings chose one strategy for dealing with the evidence of the cash. "[W]e see no reason to insulate them from the natural consequences of that choice." Id.
 
 
 10
 The trial court has broad discretion in ruling on the relevance and admissibility of evidence. United States v. Zandi, 769 F.2d 229, 237 (4th Cir. 1985). The district court did not abuse its discretion by admitting evidence of the cash.
 
 B.
 
 11
 The appellants next charge that the district court's refusal to allow FBI Agent Koehler to give expert testimony regarding the use of switch cars by bank robbers was error. At trial, defense counsel sought to show that the method used to commit the September robbery was inconsistent with its being perpetrated by the appellants, and on appeal they continue to argue that Agent Koehler's testimony would have illuminated this inconsistency.
 
 
 12
 The Federal Rules of Evidence allow for the admission of expert testimony when the expert's "knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. It is well established, however, that"the district judge has broad discretion to decide whether such testimony ought to be admitted as helpful to the jury." United States v. Portsmouth Paving Corp., 694 F.2d 312, 323 (4th Cir. 1982). Here, expert testimony would hardly seem necessary or helpful, since the concept of using a switch car to avoid pursuit is easily within the grasp of the typical juror. The district court therefore acted within its discretion when it refused to admit the appellants' proffered expert testimony.
 
 C.
 
 13
 Appellant Stallings also contends that the district court erred in failing to grant his motion for judgment of acquittal on the charges stemming from the August bank robbery because the government failed to offer sufficient evidence to support his conviction on those counts.[3] When reviewing the sufficiency of the evidence supporting convictions, our role is limited to determining whether any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt, and as we conduct this inquiry we must "construe the evidence in the light most favorable to the government, assuming its credibility, drawing all favorable inferences from it, and taking into account all the evidence." United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991), citing Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 14
 As recounted supra Part I., the two bank robberies were remarkably similar in execution, giving rise to a possible inference that both were committed by the same person. Bank employees testified that the same man committed both crimes. Other witnesses identified Stallings with the motorcycle recovered by the police at the Palm Park Apartments after the September robbery. And Stallings was Walker's passenger on September 13, 1991, when police stopped Walker's car and found $2,690 inside. After fully examining the record, we conclude that the government plainly introduced sufficient evidence from which a rational jury could have convicted Stallings of committing the August robbery.
 
 D.
 
 15
 Finally, appellant Stallings argues that the mandatory twenty-year sentence imposed on him by the district court for his second violation of 18 U.S.C. § 924(c)(1) was improper because the enhancement should not have applied when his second conviction under the statute occurred at the same trial as his first. Section 924(c)(1) provides in relevant part that
 
 
 16
 [w]hoever, during and in relation to any crime of violence ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence ... be sentenced to imprisonment for five years.... In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years....
 
 
 17
 It is settled law in this circuit that the twenty-year mandatory enhancement "does not depend on satisfying conditions that ... the sentence be imposed on the first conviction before the enhancement can apply to the second, or that the defendant have served the sentence imposed on the first." United States v. Raynor, 939 F.2d 191, 193 (4th Cir. 1991). Stallings was twice indicted and twice convicted of using a firearm during the commission of a bank robbery, and the district court properly applied Raynor and section 924(c)(1) by sentencing him to twenty years' imprisonment for his second conviction under that provision.[4]
 
 III.
 
 18
 For the reasons given, the appellants' convictions and sentences are hereby affirmed.
 
 AFFIRMED
 
 
 [1]
 This is particularly true given that the government offered evidence showing that appellant Walker only earned $3,490 in gross pay during 1991. J.A. at 264-65
 
 
 [2]
 In Allen, parole and police officers identified the defendants as the individuals appearing on bank surveillance photos. The defendants claimed that they could not effectively probe these witnesses for bias without revealing their own criminal histories. We upheld the admission of the identification testimony, holding that the defendants' failure to fully cross-examine the officers was the result of a strategic choice they subsequently had to live with. Id. at 937-38
 The judgment in Allen was vacated by the Supreme Court and the case remanded for reconsideration of another issue presented in the appeal. Allen v. United States, 479 U.S. 1077 (1987). On remand, this court specifically readopted its holding regarding the identification testimony, noting that it was "not affected" by the Supreme Court's decision. United States v. Allen, 814 F.2d 977 (4th Cir. 1987).
 
 
 [3]
 Stallings does not challenge the sufficiency of the evidence supporting his conviction on the counts charged as a result of the September robbery
 
 
 [4]
 Stallings also claims that the twenty-year enhancement was unjustified because both convictions stemmed from the same "criminal episode" and because the government failed to give him notice that it would seek the enhancement. Both contentions lack merit. Two bank robberies separated by over a month's time can hardly be considered parts of merely one criminal episode, even if their execution was markedly similar. Finally, the government was not required to give any special notice to the defendant: the enhancement provision of section 924(c)(1) is self-executing, and the indictments in this case fully informed Stallings that he was charged with two violations of that statute