993 F.2d 1539
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Leroy BOONE, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Frederick Gaston BROWN, Jr., a/k/a Fred, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellant,
v.
Leroy BOONE, Defendant-Appellee.
 Nos. 91-5585, 91-5590, 91-5612.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: February 17, 1993
Argued: March 3, 1993
Decided: June 8, 1993
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Norfolk. John A. MacKenzie, Senior District Judge. (CR-90-149-N)
 Argued: Albert David Alberi, Special Assistant United States Attorney, Norfolk, Virginia, for Appellant.
 Jack Elmer Ferrebee, Virginia Beach, Virginia, for Appellees.
 On Brief: Richard Cullen, United States Attorney, Norfolk, Virginia, for Appellant.
 Albert M. Tripp, Virginia Beach, Virginia, for Appellee Brown.
 E.D.Va.
 No. 91-5585 AFFIRMED, Nos. 91-5590 and 91-5612 DISMISSED.
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and RESTANI, Judge of the United States Court of International Trade, sitting by designation.
 PER CURIAM:
 
 
 1
 In connection with a series of four bank robberies that were committed in Virginia Beach, Virginia in August 1990 by various members of a group that met socially to drink and smoke crack cocaine, Frederick Gaston Brown pled guilty to participating in three of the robberies and to using a firearm in each. Leroy Boone was tried and convicted of conspiracy to commit robbery, of participating in two of the robberies, and of using a firearm in each. Brown cooperated with the government after pleading guilty and testified on its behalf in Boone's trial. Brown was sentenced to 252 months imprisonment and Boone to 308 months.
 
 
 2
 Both Boone and Brown appealed their sentences, Brown alleging in appeal No. 91-5590 that the court should have departed downward for his substantial assistance, and Boone alleging in appeal No. 915585 that his offense level was improperly enhanced because of his leadership role and obstruction of justice. In addition, Boone appealed his conviction, alleging errors in evidentiary rulings and ineffective assistance of counsel.
 
 
 3
 The government cross-appealed in No. 91-5612, contending that in sentencing Boone the district court failed to impose mandatory consecutive sentences for the two firearms convictions as required by 18 U.S.C. § 924(c)(1). Boone contends that the government's crossappeal must be dismissed because the United States attorney failed to obtain the necessary authority for taking the appeal required by 18 U.S.C. § 3742(b).
 
 
 4
 For the reasons that follow, we affirm the judgment against Boone and dismiss the appeals taken by Brown and the government.
 
 
 5
 * Boone was charged with conspiracy to commit bank robbery, participating in the two bank robberies that took place on August 20 and 23, 1990, and two firearms counts. At trial testimony was received from bank employees who were present during the four robberies, law enforcement authorities involved in the investigation of those crimes, and indicted and unindicted co-conspirators of Boone. Their testimony established that the final three robberies were committed by persons who frequented Boone's home to drink, smoke crack cocaine, and socialize. Boone supplied the shotgun used in those three robberies and was present in a get-away car while the crimes were committed. Following the final robbery on August 23, Boone drove the group back to his house, where he divided the stolen money four ways.
 
 
 6
 During its case-in-chief, the government called Special Agent Martin Houlihan, who testified that he had arrested Boone on August 24, 1990, but made no mention of the charge underlying the arrest. Agent Houlihan testified simply that he searched Boone pursuant to the arrest and recovered $1,180 in cash from Boone's right shoe, $340 from his left shoe, and $150 from his jacket pocket. Included in this money was a $20 "bait" bill that had been stolen during the previous day's bank robbery.
 
 
 7
 On cross-examination, Agent Houlihan was asked whether "Boone at the time of his arrest told you where the money came from?" The government objected on the basis that an answer to the question would constitute an out-of-court statement by Boone offered for the truth of the matter asserted, i.e., that Boone came across the money legally. Over the objection, Agent Houlihan was allowed to answer that "[f]irst [Boone] said that he may have gotten it at Charlie's Truck Stop on Northampton Boulevard, or that it could have come from HUD. Apparently his house had been condemned. And then at the end of the interview he said that he had gotten the money from a boarder at his residence by the name of Freddie Brown." Agent Houlihan also stated that Boone, at the time of his arrest, denied any involvement in the bank robberies.
 
 
 8
 On redirect, the government sought to expose the remainder of Boone's post-arrest statement to Agent Houlihan. Over defendant's objection, Agent Houlihan stated that he had shown Boone a photograph of individuals who had committed a robbery of the Life Savings Bank on August 20, 1990, and that Boone "said that he could identify some of the individuals depicted in the photographs, but first he wanted to be assured that he would not be charged with bank robbery and that he wanted to keep all the money that we had recovered on his person except the $20 bait bill." Agent Houlihan further testified that Boone had also asked "[t]hat the theft from interstate shipment charge against him be dismissed." This was the first mention made of the unrelated charge underlying Boone's arrest by Agent Houlihan.
 
 
 9
 Boone now argues that the trial court erred in allowing Agent Houlihan to testify that the basis of his arrest was in connection with an unrelated crime. Under United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir. 1988), prior bad acts are admissible under Fed. R. Evid. 404(b) only if they are "(1) relevant to an issue other than character, (2) necessary, and (3) reliable." (Footnotes omitted).
 
 
 10
 We note at the outset that during direct examination the government did not question Agent Houlihan about the basis for Boone's arrest and his statement concerning that basis. Only after Boone strategically opened the subject during cross-examination did his statement come into evidence. Part of it was clearly relevant. The fact that Boone knew some of the bank robbers and was willing to identify them in return for favorable treatment by the government tended to contradict his previous claim to Agent Houlihan that he innocently came into possession of the $20 bill. Arguably, however, there was still minimal need for Agent Houlihan to mention the basis of Boone's arrest. While Boone's entire statement was admitted for the sake of completeness and context, if admission of a part of it was error, the error was harmless. The standard for determining if a nonconstitutional error at trial was harmless asks"whether we, in appellate review, can say 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.' " United States v. Urbanik, 801 F.2d 692, 698 (4th Cir. 1986) (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)). In this case, three others involved in the robberies testified at length about Boone's participation in them. We are fully satisfied that it is "highly probable that the error did not affect the judgment." Id. at 699 (quoting United States v. Nyman, 649 F.2d 208, 212 (4th Cir. 1980)).
 
 II
 
 11
 Boone also contends that the district court erred in admitting evidence that he threatened the life of a government witness on the morning of trial. Christopher Moore, an unindicted co-conspirator who appeared as a government witness at trial, was questioned by Boone's counsel about his agreement with the government to testify against Boone in exchange for lenient treatment for previous crimes. On redirect, Moore testified that, earlier that morning in the holding facility, Boone admonished Moore "not to think that he [Boone]'s going to be locked up forever and he'd get out, even if your old man can't find me, he's going to kill me."
 
 
 12
 A defendant's attempt to influence a witness' testimony is admissible against the defendant because it is relevant to the issue of criminal intent. See United States v. Billups, 692 F.2d 320, 329-30 (4th Cir. 1982), cert. denied, 464 U.S. 820 (1983). Moreover, the evidence of the threat at issue here was not unfairly prejudicial to Boone. Following defense attempts to impeach Moore's credibility by suggesting that his only motive in testifying was to obtain favorable treatment from the government, the government was entitled to demonstrate that there was also a risk to Moore in testifying. See United States v. Mills, 704 F.2d 1553, 1560 (11th Cir. 1983), cert. denied, 467 U.S. 1243 (1984). The trial court has wide discretion in making the balancing determination required by Federal Rule of Evidence 403, and will not be overturned except under the most extraordinary circumstances. See United States v. Heyward, 729 F.2d 297, 301 n.2 (4th Cir. 1984), cert. denied, 469 U.S. 1105 (1985). We find no such circumstances present here and therefore affirm the district court's ruling.
 
 III
 
 13
 Boone contends finally that his conviction should be reversed because he was afforded ineffective assistance of counsel at trial in violation of the Sixth Amendment. We dispose of this argument simply by observing that a claim of ineffective assistance should usually be raised in a motion under 28 U.S.C. § 2255 rather than on direct appeal, unless the record clearly shows that the assistance provided the defendant by counsel was ineffective. See United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992), cert. denied, 113 S. Ct. 1342 (1993). In this case that clear showing was not made.
 
 IV
 
 14
 Boone appealed his sentence on the ground that the sentencing court improperly enhanced his offense level under the Sentencing Guidelines because of his management role and obstruction of justice. The government cross-appealed Boone's sentence, contending that the district court improperly refused to impose mandatory consecutive sentences of five years and twenty years, respectively, for the two gun violations required by 18 U.S.C. § 924(c)(1). See United States v. Raynor, 939 F.2d 191 (4th Cir. 1991). Boone moved to dismiss the government's cross-appeal because the United States attorney failed to obtain approval of the Attorney General, Solicitor General, or a deputy solicitor general as required by 18 U.S.C.s 3742(b). The United States attorney agreed that the permission had not been obtained and did not seek to argue the government's cross-appeal, agreeing that it could not do so without authority and that it should not even have filed the government's brief on the cross-appeal. In view of these developments at oral argument Boone withdrew his appeal on the sentencing issue so as not to expose himself to yet a longer sentence than that which he was given. In the circumstances, therefore, we do not consider Boone's sentencing arguments and we dismiss the government's cross-appeal. See 18 U.S.C. § 3742(b).
 
 V
 
 15
 Finally, Brown appealed his sentence, contending that the court should have departed downward in recognition of his unusual cooperation in testifying for the government. When it was pointed out to him, however, that three mandatory consecutive sentences for the firearms convictions were not imposed by the district court against him, he too requested to withdraw his appeal.
 
 VI
 
 16
 Accordingly, we affirm Boone's conviction (No. 91-5585); we grant leave to Brown to withdraw his appeal (No. 91-5590), dismissing it; and we dismiss the government's cross-appeal (No. 91-5612).
 
 IT IS SO ORDERED