64 F.3d 660
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of Amercia, Plaintiff-Appellee,
v.
Randell Brice HARRIS, a/k/a Randall Brice Harris, Defendant-Appellant.
 No. 94-5668.
 United States Court of Appeals, Fourth Circuit.
 Argued June 9, 1995
Decided Aug. 14, 1995.
 
 ARGUED: Earle Dukes Roberts, Jr., Charlotte, NC, for Appellant. Gretchen C.F. Shappert, Assistant United States Attorney, Charlotte, NC, for the Appellee. ON BRIEF: Mark T. Calloway, United States Attorney, Charlotte, NC, for Appellee.
 Before LUTTIG and WILLIAMS, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Randell Brice Harris, a/k/a "Al Mundy," appeals his conviction and sentence on numerous charges arising out of his involvement in a conspiracy to distribute controlled substances. He contends on appeal (1) that the evidence was not sufficient to support his conspiracy conviction, (2) that the district court erred in determining the quantity of drugs reasonably foreseeable to him in furtherance of the conspiracy, and (3) that the court erred in sentencing him on multiple counts of possession of a firearm during drug trafficking and during a crime of violence in violation of 18 U.S.C. Sec. 924(c)(1) (1988), rather than merging the Sec. 924(c) charges. Finding no merit in his arguments raised on appeal, we affirm.
 
 I.
 
 2
 Viewed in the light most favorable to the government, Glasser v. United States, 315 U.S. 60, 80 (1942), the facts as adduced at trial are as follows. Willie James Brown, Jr., a/k/a/ "Bug," was the head of a drug distribution conspiracy in Charlotte, North Carolina, and testified at trial that Appellant Harris was Brown's enforcer who, among other things, delivered drugs and collected debts. Brown had no driver's license, and Harris acted as Brown's driver when Brown bought cocaine and cocaine base ("crack") from his supplier, Dino Davis. Harris also helped run the drug distribution ring during the periods when Brown was in jail. Brown's brother, Eric Brown (Eric), who assisted in the drug distribution conspiracy, testified that Harris, whom he knew as Al Mundy, delivered drugs and drove for Brown, and that Harris used various guns, including a 9 mm pistol, when working for Brown. In March 1993, Harris pistol whipped Bob Fullager, a drug customer who owed Brown money. On October 12, 1993, Brown sent Harris to steal five pounds of marijuana that he had arranged to buy from Bill Gardner, a young white man who bought crack cocaine from Brown and occasionally sold marijuana to Brown. Harris was carrying an older model 9 mm pistol when he left Brown's house to meet Gardner. Gardner's body was discovered in his car late that evening by officers of the Charlotte-Mecklenburg Police Department. Although no murder weapon was ever recovered, ballistics tests indicated Gardner had been shot with a Makarov 9 mm pistol, an older model pistol. Harris told Brown that he had to shoot Gardner when he refused to relinquish the drugs. After he was arrested, Harris told a cellmate that he was in custody on federal cocaine and murder charges, and that he had shot and killed a young white man, but that the authorities "didn't have much of a case [against] him." (J.A. 263.)
 
 
 3
 On February 9, 1994, Brown, Harris, Eric Brown, Dino Davis, and others were indicted for, among other things, conspiracy to possess with intent to distribute cocaine and cocaine base from January 1990 through December 23, 1993, in violation of 21 U.S.C. Sec. 846 (1988). Brown pled guilty and testified against Harris at trial. Other members of Brown's drug ring also testified about Harris's general involvement in the conspiracy, although many admitted on cross-examination that they were not personally aware of the exact role Harris played in specific instances, or of the exact quantity of drugs that Harris personally handled. The jury found Harris guilty of most of the indicted charges, including the Sec. 846 conspiracy charge, murder in aid of racketeering under 18 U.S.C. Sec. 1959(a)(1), conspiracy to commit murder in aid of racketeering under 18 U.S.C. Sec. 1959, assault with a dangerous weapon in aid of racketeering under 18 U.S.C. Sec. 1959(a)(3), two counts of use of a firearm during a drug trafficking crime under 18 U.S.C. Sec. 924(c), and two counts of use of a firearm during a crime of violence under 18 U.S.C. Sec. 924(c). The district court sentenced Harris to life imprisonment for conspiracy under Sec. 846, plus a total of fifty years to run consecutively on the Sec. 924(c) charges.[1] On appeal, Harris challenges the sufficiency of the evidence and raises two sentencing issues.
 
 II.
 
 4
 Harris argues the evidence was insufficient to prove beyond a reasonable doubt his involvement in the conspiracy. He contends there were two conspiracies, one between him and Brown, and the other, in which he was not involved, between Brown and co-conspirators Dino Davis, Eric Brown, and John Edward "Duke" Davis, Jr. He argues that only Brown's testimony tied him to any conspiracy, and that the testimony of the others only reflected his presence, and not his involvement, during drug deals. Thus, he concludes the government has shown only his mere association with criminals, which is not sufficient to support a conspiracy conviction. United States v. Bell, 954 F.2d 232, 237 (4th Cir.1992).
 
 
 5
 We review "the evidence and all reasonable inferences arising from it ... in the light most favorable to the government." United States v. Laughman, 618 F.2d 1067, 1075 (4th Cir.) (citing Glasser, 315 U.S. at 80), cert. denied, 447 U.S. 925 (1980). To support a conviction for conspiracy, the government must prove that a conspiracy existed, that the defendant knew of the conspiracy, and that the defendant willfully joined the conspiracy on at least one occasion. Bell, 954 F.2d at 236. The agreement to conspire may be inferred from the totality of the circumstances. Id. Once a conspiracy has been shown to exist, the government need only prove "a slight connection between the defendant and the conspiracy to support conviction." United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied, 112 S.Ct. 3051 (1992). A defendant need not possess knowledge of the specific details of the conspiracy or of his co-conspirators, and may be convicted for even a minor role as long as he intentionally participated in the conspiracy. Id.
 
 
 6
 "Whether there is a single conspiracy or multiple conspiracies, as well as an agreement to participate in the conspiracy, is a question of fact for the jury and we must affirm its finding of a single conspiracy 'unless the evidence, taken in the light most favorable to the government, would not allow a reasonable jury so to find.' " United States v. Harris, 39 F.3d 1262, 1267 (4th Cir.1994) (quoting United States v. Urbanik, 801 F.2d 692, 695 (4th Cir.1986)). A single conspiracy can arise out of a series of transactions when, as here, there is an "overlap of key actors, methods, and goals." United States v. Leavis, 853 F.2d 215, 218 (4th Cir.1988).
 
 
 7
 The evidence of Harris's active participation in the conspiracy is overwhelming. As outlined above, Harris's co-conspirators testified extensively about his involvement in the drug distribution ring as a driver, enforcer, and runner who delivered drugs and picked up payments. Many additional witnesses told of Harris's involvement in the drug distribution business. Harris does not deny his willing participation with Brown in various drug distribution activities. The trial evidence supports the reasonable inference that Harris knew his activity was part of a larger scheme by Brown to sell crack cocaine in the Charlotte area, that other co-conspirators were involved in the scheme, and that together they pursued a common goal--to personally profit from the illegal drug sales. Thus, the evidence was sufficient to support Harris's conspiracy conviction.[2]
 
 III.
 
 8
 Next, Harris objects to being sentenced based on the entire quantity of drugs attributed to Brown's drug distribution conspiracy. Harris argues the district court failed to differentiate among the coconspirators and held him liable for the entire business of the conspiracy, although Dino and Duke Davis and Eric Brown handled certain drug sales in which they testified Harris was not involved. The gist of his argument is that he should only be liable for those drugs the distribution of which he personally managed. We disagree.
 
 
 9
 After a conspirator joins the conspiracy, he is liable for all reasonably foreseeable acts of his co-conspirators in furtherance of the conspiracy. United States v. McManus, 23 F.3d 878, 885 (4th Cir.1994); U.S.S.G. Sec. 1B1.3(a)(1)(B) & comment. (n.2(c)(3)).[3] Thus, a defendant can only be sentenced based on the quantity of drugs reasonably foreseeable to him within the scope of the conspiracy. United States v. Irvin, 2 F.3d 72, 78 (4th Cir.1993), cert. denied, 114 S.Ct. 1086 (1994). Harris joined the conspiracy in 1990 and was heavily involved in its operations. He handled drugs and money, and acted as Brown's driver, runner, and enforcer. He was a member of the conspiracy during the entire period of the indictment and was aware that the other co-conspirators charged were also selling drugs for Brown. The district court based its drug quantity determination on the testimony of Sergeant Terry Sult, an expert witness who reached his conclusion on drug quantity based on the testimony of witnesses at trial. The district court adopted Sult's determination that the conspiracy distributed 15.437 kg crack cocaine, 3.9 kg powder cocaine, and 5 pounds of marijuana, and concluded that the entire quantity distributed was reasonably foreseeable to Harris. The record supports the conclusion that these quantities were the result of reasonably foreseeable acts of Harris and his co-conspirators in furtherance of the conspiracy to distribute drugs in the Charlotte area. Therefore, we find no clear error in the district court's determination holding Harris accountable for the entire quantity of drugs attributed to the conspiracy. United States v. Williams, 977 F.2d 866, 870 (4th Cir.1992), cert. denied, 113 S.Ct. 1342 (1993).
 
 IV.
 
 10
 Finally, Harris raises two challenges to the sentences imposed for his four convictions under 18 U.S.C. Sec. 924(c). Based on the October 12, 1993, murder of Gardner during a marijuana deal, Harris was convicted of use of a firearm during drug trafficking (Count Five) and use of a firearm during a crime of violence (Count Six). Based on Harris's March 1993 pistol whipping of Fullager, Harris was convicted of use of a firearm during a crime of violence (Count Eight) and use of a firearm during drug trafficking (Count Nine). The district court sentenced Harris to five years to run consecutively on each of Counts Five and Six, and twenty years consecutively on each of Counts Eight and Nine, for an added fifty years to his life sentence for conspiracy to distribute drugs.[4]
 
 A.
 
 11
 First, Harris argues he has twice been subjected to double jeopardy by being punished for two crimes arising out of the same event.[5] We disagree. Double jeopardy does not arise when the proof of one
 
 
 12
 offense does not establish each element of the other offense. Brown v. Ohio, 432 U.S. 161, 168 (1977); Blockburger v. United States, 284 U.S. 299, 304 (1932) ("[W]here the same act or transaction consti tutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."); see also United States v. Luskin, 926 F.2d 372, 376 (4th Cir.) (924(c) does not apply an "episode test" requiring events to occur on different occasions for each conviction), cert. denied, 502 U.S. 815 (1991). Use of a gun during drug trafficking does not involve the same elements of proof as use of a gun during a violent crime, even if both arise out of the same criminal event. Thus, we discern no double jeopardy violation.
 
 B.
 
 13
 Harris also argues he should not be sentenced consecutively for the second conviction arising out of both the October and March events (Counts Six and Nine) because both of the convictions arose out of the same indictment. The Fourth Circuit has already rejected Harris's argument. A defendant must receive a mandatory consecutive sentence for each conviction under Sec. 924(c), even if each offense was charged in the same indictment. United States v. Raynor, 939 F.2d 191, 194 (4th Cir.1991).
 
 V.
 
 14
 For the foregoing reasons, we affirm the judgment of the district court.
 
 AFFIRMED
 
 
 [1]
 Harris's sentences for the other crimes run concurrently with his life sentence
 
 
 [2]
 Harris argues he should not be convicted based on Brown's testimony alone, but this is a credibility issue that the jury determined in finding Harris guilty. Harris, 39 F.3d at 1267; United States v. Saunders, 886 F.2d 56, 60 (4th Cir.1989)
 
 
 [3]
 United States Sentencing Commission, Guidelines Manual, Sec. 1B1.3(a)(1)(B) (Nov.1993)
 
 
 [4]
 Harris also received concurrent life sentences for possession of a firearm by a convicted felon and a total of 28 years for his other offenses
 
 
 [5]
 Harris makes this argument twice, once for the pistol whipping in March (Counts Five and Six) and again for the October murder (Counts Eight and Nine), because during each event his use of a firearm during drug trafficking arose out of the same actions as did his use of a firearm during a crime of violence