983 F.2d 1306
 38 Fed. R. Evid. Serv. 103
 UNITED STATES of America, Plaintiff-Appellee,
v.
Pedro ARAGON, a/k/a Jose, a/k/a El Tigre, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robertulio VIANA, a/k/a Robert Viana, a/k/a Carlos, a/k/a
Jackal, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Fernando BOTERO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jesus Walter JARAMILLO, Defendant-Appellant.
 Nos. 91-5042, 91-5056 to 91-5058.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 5, 1992.
Decided Jan. 14, 1993.
As Amended Jan. 25, 1993.
 
 1
 Richard Ware Levitt, Law Offices of Richard Ware Levitt, New York City, argued (Todd Merer, New York City, on brief for appellant Viana, Reemberto Diaz, Jose Batista, Diaz & Batista, P.A., Hialeah, FL, on brief for appellants Botero and Jaramillo), for appellants.
 
 
 2
 Scott Newton Schools, Asst. U.S. Atty., Charleston, S.C., argued (E. Bart Daniel, U.S. Atty., on brief), for appellee.
 
 
 3
 Before HALL and NIEMEYER, Circuit Judges, and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.
 
 TILLEY, District Judge:
 
 4
 The appellants, Robertulio Viana, Fernando Botero, Jesus Jaramillo, and Pedro Aragon were charged with various crimes stemming from their involvement in a foiled plan to rescue a federal prisoner from the Charleston County, South Carolina jail on February 16, 1990. Each was convicted by a jury of: (1) conspiring to effect an escape, 18 U.S.C. §§ 371, 752; (2) obstructing justice, 18 U.S.C. § 1503; (3) violating the Travel Act, 18 U.S.C. § 1952(a)(2); and (4) possessing a controlled substance with intent to distribute, 21 U.S.C. §§ 812, 841.
 
 
 5
 The appellants appeal their convictions and sentences on various grounds. For the reasons stated hereinafter, we affirm.
 
 I.
 
 6
 The appellants first argue that the evidence was insufficient to prove beyond a reasonable doubt that the object of the jailbreak effort was a federal prisoner. The relevant question for this court is whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); United States v. Cummings, 937 F.2d 941, 943 (4th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 395, 116 L.Ed.2d 345 (1991). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319, 99 S.Ct. at 2789.
 
 
 7
 With regard to the charge of attempted rescue, appellants contend the evidence proved the target of the escape was a state prisoner rather than a federal prisoner. There was evidence, both from the government and defense, which indicated the rescue target may have been a state prisoner. There was, however, other evidence indicating that the target may have been a federal prisoner.
 
 
 8
 Some evidence suggested that the target of the escape plan was the state prisoner, Prada. For example:
 
 
 9
 1. Lourdes Oliva, a government witness, testified that the escape object was described to her by defendant Viana as being a doctor or like a doctor. Prada is a dentist and is known as "doc" or "doctor."
 
 
 10
 2. Oliva said the escape object was waiting for his sentence to be reduced. Prada was cooperating against his codefendants in hopes of a sentence reduction.
 
 
 11
 3. Oliva said that the object, as described by Viana, was arrested in Charleston. Prada was arrested in Charleston, whereas Cruz and Perez--the other possible escape targets--were arrested on Hilton Head.
 
 
 12
 4. Prada's prison file was marked "escape risk."
 
 
 13
 5. Oliva said that according to Viana, the escape object was "so smart" he had been able to draw a map of the prison without ever having left the prison. Prada had never left the prison, whereas Cruz and Perez had.
 
 
 14
 6. The rescue was supposedly called off because the object's bed was searched and, in fact, Prada's bed had been searched just before the plan was aborted.
 
 
 15
 Evidence that the object of the escape effort was the federal prisoner, Cruz, included the following:
 
 
 16
 1. According to Rego, a government witness, Viana said the object had been arrested on a 500 kilogram case, and according to Oliva, the object was arrested on a 400 kilogram case. Cruz and Perez were arrested in the Hilton Head case, which involved a total of 502 kilograms.
 
 
 17
 2. According to Oliva, Viana said the object had been arrested at a hotel when he tried to pick up a van with the drugs. This describes the actual circumstances of Cruz's arrest.
 
 
 18
 3. State prisoner Prada testified for the government and denied being the escape target.
 
 
 19
 While some evidence pointed toward Prada, and other evidence pointed toward Cruz and Perez, still other evidence was equivocal, or pointed to the possibility of an unidentified person being the object:
 
 
 20
 1. Oliva claimed to have been told by Viana that the object was of normal height, between 5'5"' and 5'7"'. Cruz is 6'0"', Perez is 5'7"' and Prada is 5'9"'.
 
 
 21
 2. Rego claimed to have been told by Viana that the object was incarcerated without bail. Cruz and Perez were each denied bail. Prada's bail had been set at $1,250,000; however, his bail was revoked thereafter by virtue of a bench warrant.
 
 
 22
 3. Oliva and Rego gave contradictory testimony regarding the status of the escape object's case. Rego said he had not yet been tried, whereas Oliva said he was awaiting sentencing or had already been sentenced. Cruz in fact was awaiting sentencing, whereas neither Perez nor Prada had been tried.
 
 
 23
 4. Both Rego and Oliva said the escape object was Colombian. Prada is Colombian, whereas Cruz's and Perez's nationality was unclear.
 
 
 24
 5. Oliva said that the object, as described by Viana, was between 38 and 39 years old. Prada was 34, whereas Cruz was 29 and Perez was 32 or 33.
 
 
 25
 When a jury can choose between conflicting evidence, that decision should stand. Jackson, 443 U.S. at 319, 99 S.Ct. at 2789. Taking the evidence in the light most favorable to the government, there was sufficient evidence from which a reasonable juror could find that the appellants intended to assist in the jailbreak of a federal prisoner. A trier of fact could have chosen to believe that part of the government witnesses' testimony which related to Cruz as opposed to Prada, especially in light of Prada's testimony that he was not the escape target.
 
 II.
 
 26
 In lieu of calling two witnesses to the stand, the parties had entered into written stipulations regarding what the testimony would have been had the witnesses actually testified. The appellants claim that the district court erred by permitting the jury to take the written stipulations along with other trial exhibits into the jury room during its deliberation. The stipulations related to testimony of an incarcerated individual who was familiar with the Ochoa Cocaine Cartel, and the testimony of the FBI agent who had investigated the Cruz/Perez case.
 
 
 27
 Stipulations as to testimony may be admitted into evidence. Accord United States v. Lopez, 611 F.2d 44, 46 (4th Cir.1979). Therefore absent clear prejudice to appellants, which has not been shown in this case, the decision to send properly admitted exhibits to the jury room rests within the discretion of the trial court. See e.g. United States v. Lujan, 936 F.2d 406, 411 (9th Cir.1991); United States v. Betancourt, 838 F.2d 168, 175 (6th Cir.), cert. denied, 486 U.S. 1013, 108 S.Ct. 1748, 100 L.Ed.2d 210 (1988); United States v. Hines, 696 F.2d 722, 733-34 (10th Cir.1983).
 
 III.
 
 28
 Appellants next claim that the court erred when it permitted William Roa to testify that Cruz had asked him whether it would be easy to escape from the Georgetown County Jail. The appellants argue that the evidence was irrelevant and highly prejudicial. The district court judge admitted the statement because it showed that escape was on Cruz's mind. United States v. Lujan, 936 F.2d 406, 411 (9th Cir.1991).
 
 
 29
 The trial court has wide discretion in addressing an argument under Fed.R.Evid. 403, and its decision not to exclude evidence under Rule 403 will be reversed only in "the most extraordinary circumstances." United States v. Heyward, 729 F.2d 297, 301 n. 2 (4th Cir.1984), cert. denied, 469 U.S. 1105, 105 S.Ct. 776, 83 L.Ed.2d 772 (1985).
 
 
 30
 As has already been discussed, one of the most seriously disputed facts in the case was the identity of the person to be rescued. Because Roa's testimony tended to show that an alleged jailbreak target was, in fact, discussing escape, the testimony was highly relevant. We do not find this relevance to have been substantially outweighed by undue prejudice.
 
 IV.
 
 31
 Appellants next contend that the court erred by instructing the jury that the government was not required to prove they were aware of the federal status of the intended target.
 
 
 32
 The statutes at issue--18 U.S.C. § 752(a) and 18 U.S.C. § 1503--do not explicitly require that the defendant be aware of the target's status. Because knowledge is not explicitly mentioned, it is not an essential element of either offense and, therefore, is unnecessary for the government to prove. See e.g. United States v. Feola, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975); United States v. Ardito, 782 F.2d 358 (2d Cir.), cert. denied sub nom. Pollina v. United States, 475 U.S. 1141, 106 S.Ct. 1792, 90 L.Ed.2d 338 and cert. denied sub nom. Ardito v. United States, 476 U.S. 1160, 106 S.Ct. 2281, 90 L.Ed.2d 723 (1986); United States v. Hobson, 519 F.2d 765 (9th Cir.), cert. denied sub nom. Newman v. United States, 423 U.S. 931, 96 S.Ct. 283, 46 L.Ed.2d 261 (1975).
 
 V.
 
 33
 Two of the Appellants, Aragon and Jaramillo, argue that the district judge should not have told the jury during final instructions that there was no evidence connecting the state defendant, Prada, to a Colombian drug cartel. They argue that the criminal complaint indicated that Prada, Cruz, and Perez, were each "known" to be linked to one or more Colombia, South America narcotics organizations.
 
 
 34
 It is true that Federal Bureau of Investigation Special Agent Quick acknowledged that the complaint contained wording to the effect that "... [I]t is known that all of these individual (sic) are linked to one or more Colombia, South American narcotics organizations." The record, however, reveals this information was elicited not in a context to establish the truth of the matter asserted but to show, instead, where the government's prime witness, Rego, may have received his information. The record shows the following:
 
 
 35
 Q: [by Mr. Merer] And Robert Rego was served with a copy of the criminal complaint, was he not?
 
 
 36
 A: Correct.
 
 
 37
 Q: And in that criminal complaint did it not say that Cruz and Perez were arrested for the importation of 502 kilograms of cocaine from Columbia (sic)?
 
 
 38
 A: Yes.
 
 
 39
 Q: And did it not say from all investigation leading up to the arrest of these individuals, and by that I include Prada, that it is known that all of these individual (sic) are linked to one or more Columbia (sic), South America narcotics organizations....
 
 
 40
 A: Yes, it says that.
 
 
 41
 Q: So Robert Rego was given a copy of this complaint, correct?
 
 
 42
 A: Yes.
 
 
 43
 Jt.App. at 662-63 (emphasis added).
 
 
 44
 These questions ostensibly were limited in scope to impeaching Rego's testimony and not to establishing the truth of the matter asserted, i.e. Prada's actual involvement with a cartel. Their context would not have alerted opposing counsel to object and thereby condition substantive admissibility upon the district court's determination regarding the trustworthiness of information about who it was that "knew" of Prada's cartel association and how that knowledge was derived.[1] See United States v. Ramirez, 894 F.2d 565, 570-71 (2nd Cir.1990). Furthermore, defense counsel never sought to introduce the complaint itself.
 
 
 45
 Moreover, the instruction about which Aragon and Jaramillo complain--an objection in which co-defendants Viana and Botero did not join--was given by the district judge in a context primarily favorable to the defendants. While instructing the jury with regard to the Travel Act count, the judge said: "Finally, I charge you that only if the Government proves beyond a reasonable doubt that the defendants' efforts in this case were to free either or both of the jailed inmates, Cruz and Perez, can the defendants be convicted under this count of the indictment, as there is no evidence whatever that the other inmate, Prada, was involved with any international drug smuggling operation or unlawful business activity." Trial Transcript at 744-45.
 
 
 46
 A violation of the Travel Act normally would not depend upon the status (i.e. federal or state) of the target of the prison escape. In this case, however, there was no evidence of the state prisoner's (Prada's) involvement with a Colombian drug cartel; thus, the defendants could only have been convicted upon a finding that the escape target was someone who did, i.e., one of the federal prisoners (Cruz or Perez). Considering that there was evidence from which a jury might have identified Prada as the escape target, the court was taking care to make sure the jury understood it could not find the defendants guilty of a Travel Act violation if they found Prada was the object of the rescue.
 
 
 47
 The court did not err in giving this instruction.
 
 VI.
 
 48
 The Appellants next claim that the trial court erred in holding as a matter of law that assisting a prisoner to escape is a "crime of violence" under the Travel Act, 18 U.S.C. § 1952(a)(2) (West 1984 & Supp.1992).[2] They argue that the question is one for the jury and should be determined according to the facts of each individual case. Whether "crime of violence" as used in 18 U.S.C. § 1952 is a determination of law or of fact appears to be a question of first impression. For the reasons stated below, we conclude that the trial court was correct in its implicit holding that "crime of violence" is a question of law for the court to decide, and that an attempt to rescue or assist a prisoner to escape, 18 U.S.C. § 752 (West 1976 & Supp.1992), is categorically a "crime of violence."
 
 A.
 
 49
 "Crime of violence" is defined for purposes of all of title 18 United States Code in 18 U.S.C. § 16 (West Supp.1982). That definition provides:
 
 
 50
 The term "crime of violence" means--
 
 
 51
 (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
 
 
 52
 (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
 
 
 53
 18 U.S.C. § 16.
 
 
 54
 Subsection (a) presents a question of law because it defines crime of violence as an offense that contains, as an element, "the use, attempted use, or threatened use of physical force." 18 U.S.C. § 16(a). Appellants argue that, unlike subsection (a), subsection (b) presents a question of fact because it defines crime of violence as a felony that, "by its nature, involves a substantial risk that physical force against ... person or property ..." may be used. Id. (Emphasis added). Appellants maintain that such a determination can only be made by examining each offense and each defendant's specific conduct.
 
 
 55
 We are unpersuaded by appellants reading of the statute. Section 16(b) clearly states that a felony will qualify as a "crime of violence" only if, "by its nature," it involves a substantial risk that physical force may be used. The term "by its nature" is used within § 16(b) to qualify the term "any other offense." Giving the term "by its nature" its natural and plain meaning, § 16(b) directs the court to look to the generic nature of an offense in deciding whether the offense is a "crime of violence." Furthermore, "by its nature" is not qualified by words such as "facts" or "circumstances" or "conduct" which would lend support to appellants' argument.
 
 
 56
 This court has previously held that the language "by its nature" relates to the intrinsic nature of the crime, not to the facts of each individual commission of the offense. See United States v. Thompson, 891 F.2d 507 (4th Cir.1989), cert. denied, 495 U.S. 922, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990). Although Thompson concerned the interplay between § 16(b) and the commentary to Sentencing Guideline § 4B1.2(1) (career offender provision), Judge Phillips, in a specially concurring opinion, stated: "If we had only the statutory text of § 16(b), I would interpret the critical phrase 'by its nature' exactly as the majority does--as referring to the intrinsic nature of the offense...." Id. at 511. Other courts have also read § 16(b) to require a categorical approach rather than a fact-specific approach to determining whether a crime qualifies as a "crime of violence." See e.g., United States v. Dunn, 946 F.2d 615 (9th Cir.) (crime of possession of an unregistered firearm is a "crime of violence"), cert. denied, --- U.S. ----, 112 S.Ct. 401, 116 L.Ed.2d 350 (1991); United States v. Johnson, 704 F.Supp. 1398, 1400 (E.D.Mich.1988) (crime of felon in possession of a firearm is a "crime of violence").
 
 
 57
 United States v. Williams, 892 F.2d 296 (3rd Cir.1989), cert. denied, 496 U.S. 939, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990), cited by appellants for support, is inapposite. Williams, like many cases that have discussed 18 U.S.C. § 16, concerned the additional and more complicated question whether a defendant qualified as a career offender under the sentencing guidelines. See also United States v. Johnson, 953 F.2d 110 (4th Cir.1991), and cases cited within; United States v. Thompson, 891 F.2d 507 (4th Cir.1989), cert. denied, 495 U.S. 922, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990). Prior to the 1989 amendments to the sentencing guidelines, the career offender provision § 4B1.2(1) contained a cross reference to § 16 for the definition of "crime of violence" but it was the interpretation of the commentary to guideline § 4B1.2(1)[3] which led to a dispute among courts whether or not to engage in a factual analysis of actual conduct to determine whether an offense met the definition of a crime of violence. See Johnson, 953 F.2d at 112-13 (noting the conflict among the Circuits). The Williams court interpreted the commentary to authorize a fact-specific analysis of a defendant's actions to determine whether the "crime of violence" definition was satisfied. Williams, 892 F.2d at 304 (possessing a gun while firing it is a crime of violence; mere possession is not). This court, however, was among the courts concluding that a factual inquiry was not necessary and that the court should determine whether a crime qualifies as a "crime of violence" by looking to the intrinsic nature of the crime. Thompson, 891 F.2d at 509 (South Carolina firearm offense, making it a crime to point a firearm at a person, is categorically a crime of violence).
 
 
 58
 In contrast to cases in the sentencing context, this case involves a straightforward interpretation of § 16. As explained above, we conclude that the plain language of § 16(b) mandates that the court embark upon a categorical approach to determine whether a particular crime, "by its nature," qualifies as a "crime of violence."
 
 B.
 
 59
 We must now determine whether the crime of rescue or attempting to rescue or assist in the escape of a federal prisoner, as defined in 18 U.S.C. § 752,[4] is categorically a "crime of violence" under 18 U.S.C. § 16(b). At the outset, we note that § 752 is a felony offense; thus, the only issue is whether rescue under § 752 is a crime that "by its nature" creates a substantial risk of the possible use of physical force. 18 U.S.C. § 16(b). Our job, then, is to weigh the risk of force associated with the crime of rescue to determine whether it is a crime of violence.
 
 
 60
 For the following reasons, we agree with the trial court's implicit holding that, "by its nature," attempting to instigate or assist in the escape or rescue of a federal prisoner under § 752 is a "crime of violence" under § 16(b). Initially, it derives from common sense that events structured for the rescue or escape of a prisoner are supercharged with the potential that, in being played out, physical force will be exerted against some person or some property. The prison or custodial setting, often comprised of armed guards and secured facilities, is a volatile one for those attempting to rescue or assist another to escape. Even in those situations where rescue is attempted or effectuated by stealth, there still exists a substantial risk that physical force will be used against people or property due to the custodial setting. In the event that an escape by stealth is discovered in progress by officials, there is an immediate and substantial risk that the situation will escalate to one involving physical force in an attempt to apprehend the escapee.[5] The likelihood that physical force will be applied upon interruption of what originally had been planned as an escape of stealth is at least as great as that presented when a temporarily absent resident returns home and encounters a burglar. See United States v. Raynor, 939 F.2d 191, 196 (4th Cir.1991); United States v. Davis, 881 F.2d 973, 976 (11th Cir.1989) (conclusion that burglary of a dwelling constitutes a "crime of violence" well founded based upon potential that residents, out of alarm and fear, "may react with measures that may well escalate the criminal purposes of the intruder"), cert. denied, 493 U.S. 1026, 110 S.Ct. 735, 107 L.Ed.2d 753 (1990).
 
 
 61
 We further note that the risk that physical force will be used is compounded when the escape attempt involves more people than just the target of the escape. Compare 18 U.S.C. § 751 (making it a crime for anyone to escape or attempt to escape from the custody of an institution or officer). We are convinced that, intrinsically, the crime of attempting to rescue or assisting the escape of a federal prisoner or one held in federal custody presents a substantial risk that physical force will be used against either people or property.
 
 
 62
 Our conclusion is bolstered by looking to other cases in which this court has had to determine whether a crime constituted a "crime of violence." United States v. Headspeth, 852 F.2d 753 (4th Cir.1988), abrogated on other grounds, United States v. Taylor, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), concerned whether storehouse breaking as defined by a Maryland statute qualified as a "violent felony" for purposes of sentence enhancement under 18 U.S.C. § 924(e). The definition of "violent felony," provided in 18 U.S.C. § 924(e)(2)(B), is similar but more narrow than "crime of violence" in § 16.[6] Although the catchall clause in the definition of "violent felony" does not contain the "by its nature" language present in § 16(b), the court applied the law of lenity and held that 18 U.S.C. § 924(e)(2)(B)(ii) "must be limited in its application to offenses which, as defined, pose by their very nature a serious potential risk of injury to another." Headspeth, 852 F.2d at 759. The court concluded that the crime of storehouse breaking could not fairly be called a "violent felony" because (1) storehouse breaking generally involves unoccupied buildings, and (2) storehouse breaking only occasionally presents some risk of injury to a person. Id. at 758-59.
 
 
 63
 United States v. Thompson, 891 F.2d 507 (4th Cir.1989), cert. denied, 495 U.S. 922, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990), involved a challenge to the application of the former career offender provision of the federal Sentencing Guidelines when Guideline § 4B1.2 contained the cross reference to § 16 for the definition of "crime of violence." In Thompson, the court ruled that the crime of pointing a firearm at a person, under a South Carolina statute, qualified generically as a "crime of violence." In reaching this conclusion, the court looked to a common sense understanding of the crime as well as reported cases discussing the crime. Although the court recognized that physical force is not always utilized in the crime of pointing a firearm at someone, the court emphasized that a substantial risk that physical force may be used is "invariably present." Thompson, 891 F.2d at 510. Likewise, United States v. Raynor, 939 F.2d 191 (4th Cir.1991) recognized that burglary of a temporarily unoccupied dwelling constituted a "crime of violence."[7]
 
 
 64
 In contrast, United States v. Johnson, 953 F.2d 110 (4th Cir.1991), which involved a challenge to career offender status, held that the crime of a felon in possession of a firearm is not categorically a "crime of violence."[8] The court focused on the lack of an "immediate threat" in distinguishing the case from Thompson. The court also emphasized that in many cases of a felon in possession of a firearm, the inherent danger is "too highly attenuated to qualify the offense as a per se 'crime of violence.' " Id. at 115.
 
 
 65
 We think that the crime of instigating or assisting the rescue or attempted rescue of a prisoner is closer to the crime of pointing a firearm at someone as discussed in Thompson than it is to the crime of felon in possession of a firearm in Johnson; and closer to the crime of burglary of a dwelling as in Raynor than it is to the crime of storehouse breaking in Headspeth. Unlike storehouse breaking, the crime of attempting rescue normally involves occupied facilities and frequently--not just occasionally--presents risk of both physical injury to people as well as the risk that physical force will be used against property. Unlike the crime of being a felon in possession of a firearm, the risk of physical force being used against people or property in the event of an escape attempt is not "too highly attenuated" but immediate and substantial. The present case, like Thompson and Raynor, concerns "crime of violence" as defined in § 16 rather than the amended definition which tracks the more narrow term "violent felony." The crimes of attempting to rescue a prisoner, pointing a firearm at someone, and burglary of a dwelling, by their nature, present a substantial risk that physical force may be used. This risk is "invariably present" due to the nature of the crimes, whether or not physical force is in fact used.
 
 
 66
 Finally, our conclusion is further strengthened, as it was in Thompson, by looking to reported cases involving the offense of escape under 18 U.S.C. § 752. While it is true that one could effectuate the escape of another without the use of physical force, see e.g. United States v. Ocasio, 914 F.2d 330 (1st Cir.1990) (defendant gained access to prison through corrupt prison guard), the majority of cases have involved the use of physical force against either people or property. See e.g. United States v. Velazquez, 847 F.2d 140 (4th Cir.1988) (hacksaw blades used to cut way out); United States v. Newton, 788 F.2d 1392 (8th Cir.1986) (four men armed with shotguns forced sheriff's car off road while transporting a federal prisoner), cert. denied, 488 U.S. 1031, 109 S.Ct. 841, 102 L.Ed.2d 973 (1989); United States v. Castro, 621 F.2d 127 (5th Cir.1980) (one deputy tied-up, other guards detained by threats of violence resulting in thirteen prisoners escaping); United States v. Brown, 519 F.2d 1368 (6th Cir.1975) (hacksaw blade used to cut through prison bars); United States v. Dugan, 704 F.Supp. 175 (D.Minn.1989) (defendant pointed loaded gun at deputy sheriff in helping co-defendant to escape), aff'd, 912 F.2d 942 (8th Cir.1990); United States v. Lucas, 114 F.Supp. 583 (N.D.W.Va.1949) (assault on jailer with home-made blackjack). In cases that did not directly involve the use of physical force, there often existed a substantial risk of physical force as seen through the presence of weapons. See i.e. United States v. Payne, 923 F.2d 595 (8th Cir.) (defendants bought weapons to effectuate escape), cert. denied, --- U.S. ----, 111 S.Ct. 2830, 115 L.Ed.2d 1000 (1991).
 
 
 67
 After careful consideration, we conclude that the trial court did not err in withholding from the jury the question whether § 752 constituted a crime of violence, and that the crime of assisting or instigating the escape or attempted rescue of a prisoner is a crime of violence as defined in § 16(b).
 
 VII.
 
 68
 The Appellants next argue that the court erred in applying sentencing guidelines § 2X3.1 (accessory after the fact) to the defendants' convictions under Counts 2 (obstruction of justice) and 3 (interstate travel to commit crime), based on a cross referencing provision within the guidelines applicable to obstruction of justice, § 2J1.2(c)(1). They argue that the cross referencing should not be applied to them because they were convicted of obstruction of justice on an "endeavoring" theory (some effort, although less than an attempt).
 
 
 69
 Appellant's view of the interplay between 18 U.S.C.A. § 1503 (obstruction of justice) and U.S.S.G. § 2J1.2 (obstruction of justice and the cross reference provision) is too narrow. Section 2J1.2 provides that cross referencing is applicable only where "the offense involved obstructing the investigation or prosecution of a criminal offense." The defendants take the word "obstructing" to mean actual obstruction, not merely endeavoring. Section 2J1.2, however, is the only section of the guidelines which covers 18 U.S.C.A. § 1503 (obstruction of justice). Therefore, it follows logically that endeavoring to obstruct justice, a subpart of 18 U.S.C.A. § 1503, is to be included within § 2J1.2.
 
 
 70
 This conclusion is reinforced by the background commentary provided in U.S.S.G. § 2J1.2. The commentary explains that:
 
 
 71
 [b]ecause the conduct covered by this guideline is frequently part of an effort ... to assist another person to escape punishment for an offense, a cross reference to § 2X3.1 (Accessory After the Fact) is provided. Use of this cross reference will provide an enhanced offense level when the obstruction is in respect to a particularly serious offense, whether such offense was committed by the defendant or another person. (Emphasis added).
 
 
 72
 As the underscored word "effort" indicates, § 2J1.1 is meant to guide sentencing for all violations of 18 U.S.C.A. § 1503, whether on an obstruction or "endeavoring" theory. Defendants were convicted of obstructing justice under § 1503, namely, attempting to effectuate the escape of a convicted drug distributor prior to his sentencing. As a result, cross-referencing to § 2X3.1 (accessory after the fact) would be appropriate.
 
 VIII.
 
 73
 For the foregoing reasons, all of the Appellants' convictions and sentences are
 
 
 74
 AFFIRMED.
 
 
 
 [1]
 Rule 803 of the Federal Rules of Evidence provides in pertinent part:
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness: (8)(C) ... against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.
 
 
 [2]
 The Travel Act reads in relevant part:
 (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to-- ...
 (2) commit any crime of violence to further any unlawful activity;
 ... shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
 18 U.S.C. § 1952(a)(2).
 
 
 [3]
 Prior to November 1, 1989, the commentary to § 4B1.2 read in relevant part:
 Other offenses are covered only if the conduct for which the defendant was specifically convicted meets the above definition. For example, conviction for an escape accomplished by force or threat of injury would be covered; conviction for an escape by stealth would not be covered. Conviction for burglary of a dwelling would be covered; conviction for burglary of other structures would not be covered.
 U.S.S.G. § 4B1.2, comment. (n. 1) (emphasis added).
 
 
 [4]
 Section 752 reads in pertinent part:
 (a) Whoever rescues or attempts to rescue or instigates, aids or assists the escape, or attempt to escape, of any person ... committed to the custody of the Attorney General or to any institution or facility by his direction, shall, if the custody or confinement is by virtue of ... conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both....
 18 U.S.C.A. § 752(a).
 
 
 [5]
 Although we have cautioned against looking to the facts of a case in determining whether a crime qualifies as a "crime of violence", the instant case illustrates this point. Despite the defendants' argument that they planned to effectuate an escape by stealth, the items found in their cars at the time of their arrest included mace, mace bombs, stun guns, a hunting knife, and a jeweler's saw. Even if defendants were not initially planning on using these items to aid in the escape effort, the presence of such instruments indicates that defendants were prepared to use physical force if necessary
 
 
 [6]
 "Violent felony" is defined as:
 any crime punishable by imprisonment for a term exceeding one year that--
 (i) has as any element the use, attempted use, or threatened use of physical force against the person of another; or
 (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
 18 U.S.C. § 924(e)(2)(B) (emphasis added). As the underscored text demonstrates, the definition of "violent felony" is narrower than "crime of violence."
 
 
 [7]
 The court in Raynor was not called upon to determine whether the burglary of a dwelling qualified as a "crime of violence." That determination had already been made in the commentary to U.S.S.G. § 4B1.1. The only issue in Raynor was whether the building broken into was, in fact, a dwelling. United States v. Raynor, 939 F.2d 191, 195-97 (4th Cir.1991)
 
 
 [8]
 Johnson was decided after the application note to U.S.S.G. § 4B1.2 was revised, deleting the cross reference to § 16. The new definition of "crime of violence" in § 4B1.2, however, is identical to the "violent felony" definition discussed supra in the sentencing enhancement provision in 18 U.S.C. § 924(e). The only difference is that the sentencing enhancement statute, § 924(e), lacks the Sentencing Commission's commentary