# In re Luis VARGAS-Sarmiento, Respondent

File A26 131 384 - New York

*Decided as amended on February 5, 2004*[1]

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The offense of manslaughter in the first degree in violation of section 125.20 of the New York Penal Law is a crime of violence under 18 U.S.C. § 16(b) (2000) and is therefore an aggravated felony under section 101(a)(43)(F) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(F) (2000).

FOR RESPONDENT: Andrew L. Friedman, Esquire, New York, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY:[2] Wen-Ting Cheng, Deputy Chief Counsel

BEFORE: Board Panel: HOLMES, Acting Vice Chairman; HURWITZ and MILLER, Board Members.

HURWITZ, Board Member:

This case was last before us on April 4, 2002, when we summarily affirmed, without opinion, the results of the Immigration Judge's decision. The Immigration Judge had found the respondent removable based on his 1984 conviction for manslaughter in the first degree in violation of section 125.20 of the New York Penal Law, which the Immigration Judge had determined was a crime of violence and therefore an aggravated felony under section 101(a)(43)(F) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(F) (2000).

Pursuant to a stipulation of the parties, on July 18, 2003, the United States Court of Appeals for the Second Circuit vacated our decision and remanded the record for reconsideration in light of the court's decision in *Jobson v. Ashcroft*, 326 F.3d 367 (2d Cir. 2003). In that decision, the court held that

---

[1] On our own motion, we amend the January 2, 2004, order in this case. The amended order makes editorial changes consistent with our designation of the case as a precedent.

[2] The functions of the Immigration and Naturalization Service have been transferred to the Department of Homeland Security pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. The transfer occurred on March 1, 2003. *See Matter of D-J-*, 23 I&N Dec. 572, 573 n.1 (A.G. 2003).

second-degree manslaughter under New York law, which required only that the perpetrator recklessly cause the death of another, was not a crime of violence under 18 U.S.C. § 16(b) (2000).

Considering only the Second Circuit's decision in *Jobson v. Ashcroft*, *supra*, we are not certain whether the court would find that manslaughter in the first degree under section 125.20 of the New York Penal Law is a crime of violence within the meaning of § 16(b). However, since *Jobson*, the court has issued several other decisions regarding crimes of violence. *Chery v. Ashcroft*, 347 F.3d 404 (2d Cir. 2003); *Dickson v. Ashcroft*, 346 F.3d 44 (2d Cir. 2003); *Chrzanoski v. Ashcroft*, 327 F.3d 188 (2d Cir. 2003). We are persuaded by the language and reasoning in those cases that first-degree manslaughter is distinguishable from second-degree manslaughter and that it should be considered a crime of violence.

As the court recently reiterated in *Dickson v. Ashcroft*, *supra*, at 48, "§ 16(b) requires consideration of whether an offense . . . 'by its nature' involves a substantial risk of the use of physical force." In determining whether an offense is a crime of violence under § 16(b), the court applies the categorical approach, which focuses on the "intrinsic nature of the offense" rather than on the factual circumstances surrounding any particular violation. *Dalton v. Ashcroft*, 257 F.3d 200, 204 (2d Cir. 2001). Therefore, the court looks only to the generic elements of the statutory offense to determine whether the minimum criminal conduct required for a conviction under the statute violated is a crime of violence. *Jobson v. Ashcroft*, *supra*. In *Jobson*, the court determined that the generic elements of second-degree manslaughter under New York law were (1) the defendant's state of mind when committing the offense, recklessness, and (2) the effect of the recklessness, death.

Considering these elements, the Second Circuit first examined whether there was a risk that in committing the offense of second-degree manslaughter the defendant would use physical force.[3] Noting that there is a material difference between the risk that force will be used in committing an offense and the risk that physical injury will result, the court found that the crime of second-degree manslaughter encompassed many situations that did not involve any risk that the defendant would apply force to the victim. Examples of such situations included crimes involving passive conduct or omissions, such as failure to feed a child or to provide medical care to a child beaten by another person, and crimes of gross negligence or reckless endangerment, such as leaving an infant alone by a pool. Based on its examination of the minimum criminal conduct required for a second-degree manslaughter conviction, the court determined that the offense did not necessarily present a substantial risk that the defendant would use physical force, as required by § 16(b).

---

[3] In *Jobson v. Ashcroft*, *supra*, at 373, the Second Circuit defined physical force as "violent force." However, the court has more recently stated that "'force' is defined more broadly as 'power, violence, or pressure directed against a person or thing.'" *Dickson v. Ashcroft*, *supra*, at 50 (quoting *Chrzanoski v. Ashcroft*, *supra*, at 192).

Moreover, focusing on the verb "use" in § 16(b), the court stated that the statute contemplates only the risk of an intentional use of force. Thus, because a defendant must risk having to intentionally use force to commit an offense, the court held that an offense cannot satisfy the requirements of § 16(b) without requiring some intentional conduct. Second-degree manslaughter under New York law requires only recklessness as to death, but not any intent with regard to the use of force, so the court found that it was not a crime of violence for this reason as well.

The respondent was convicted of manslaughter in the first degree under section 125.20 of the New York Penal Law. At the time of his conviction, that statute provided, in pertinent part, as follows:

A person is guilty of manslaughter in the first degree when:

1. With intent to cause serious physical injury to another person, he causes the death of such person or of a third person; or

2. With intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance, as defined in paragraph (a) of subdivision one of section 125.25. The fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subdivision; or

3. He commits upon a female pregnant for more than twenty-four weeks an abortional act which causes her death, unless such abortional act is justifiable pursuant to subdivision three of section 125.05.

N.Y. Penal Law § 125.20 (McKinney 1984).[4]

Unlike the second-degree manslaughter statute addressed in *Jobson*, which contains a mens rea element of recklessness, subsections 1 and 2 of section 125.20 require proof of intent to cause either serious physical injury or death in order to secure a conviction for manslaughter in the first degree. Clearly, a crime that involves intentional conduct that is designed to result in serious physical injury to, or the death of, another person, and which does result in death, "*by its nature*, involves a *substantial risk* that physical force against the person or property of another *may be used* in the course of committing the offense." 18 U.S.C. § 16(b).

Because first-degree manslaughter requires proof of intent to cause serious physical injury or death, it differs significantly from the reckless conduct required for second-degree manslaughter, which the *Jobson* court found "encompasse[d] many situations" involving omissions or passive conduct that "do not involve any risk that the defendant will apply force to the victim." *Jobson v. Ashcroft*, *supra*, at 373. That is not the case with first-degree

---

[4]  We note that the current subsection 4 of section 125.20 was added to the statute in 1990.

manslaughter, where the defendant has purposefully sought to kill or seriously injure another person and has succeeded in causing a death. In order to accomplish such a crime, it is likely that the defendant will be required to engage in affirmative conduct. *See Chery v. Ashcroft*, *supra*, at 408 (distinguishing the passive conduct sufficient for a conviction for second-degree manslaughter in *Jobson* from the affirmative conduct required for a conviction for sexual assault in the second degree under Connecticut law). Furthermore, there is a *substantial risk* that such conduct *may* involve the intentional use of force.

The respondent posits hypothetical situations that he claims may not require the use of physical force in all circumstances. However, as the Second Circuit recently noted in *Dickson v. Ashcroft*, *supra*, at 51, such hypothetical scenarios are "useful only to a point" because the "inquiry under § 16(b) is broader and more flexible, and involves asking whether the crime is one that *by its nature* involves a substantial *risk* that force *may* be used." We find that when a defendant who intends to cause death or serious physical injury to another person deliberately engages in conduct that results in death, the *inherent nature* of the crime is such that there is a *substantial risk* that the defendant *may* intentionally use force in committing the crime. Thus, "although a conviction may be obtained . . . and force may not be present in all circumstances," the nature of the crimes defined in subsections 1 and 2 of section 125.20 of the New York Penal Law is such that "the *risk* of the use of force is inherent in each of the offenses." *Chery v. Ashcroft*, *supra*, at 408. We therefore conclude that the offenses prohibited by subsections 1 and 2 are crimes of violence within the meaning of 18 U.S.C. § 16(b).

Examining the offense under subsection 3 of section 125.20, we find that it may not inherently involve a risk that force will be used and therefore may not constitute a crime of violence under § 16(b). Where a statute encompasses some acts that are grounds for removal and others that are not, it is considered to be divisible. *Dickson v. Ashcroft*, *supra*, at 48. When reviewing a conviction under a divisible statute, it is permissible to refer to the record of conviction for the limited purpose of determining under which part of the divisible statute the defendant was convicted. *Id.* at 48-49. The record of conviction includes the charging document, a plea agreement, a verdict or judgment of conviction, a record of the sentence, or a plea colloquy transcript. *Id.* at 53; *see also* section 240(c)(3)(B) of the Act, 8 U.S.C. § 1229a(c)(3)(B) (2000); Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 Fed. Reg. 9824, 9831 (Feb. 28, 2003), 2003 WL 553495 (to be codified at 8 C.F.R. § 1003.41(a)).

In this case, we find that section 125.20 of the New York Penal Law is a divisible statute because it contains some offenses that may be grounds for removal and others that may not. Therefore, without referring to the conviction record, we are unable to determine whether the respondent was convicted of a removable offense. Although the conviction record does not specify the subsection under which the respondent was convicted, it does indicate that he

was initially charged with murder in the second degree under section 125.25(1) of the New York Penal Law, because "with intent to cause the death of [his victim, he] caused [her] death . . . by stabbing her with a sharp instrument."[5] Based on our examination of the record of conviction, we conclude that the respondent was convicted under either subsection 1 or 2 of section 125.20, which define lesser included offenses to the crime of second-degree murder. Having determined that both subsections define crimes of violence under 18 U.S.C. § 16(b), we find that the Immigration Judge properly ordered the respondent removed as an alien convicted of an aggravated felony.

We note that the Government has filed a motion to remand in the event that we determined that first-degree manslaughter is not a crime of violence. In view of our decision, we need not address the motion. The respondent has also filed a motion requesting that we reconsider our January 2, 2004, order. We have considered the arguments presented by the respondent and are not persuaded that our decision is in error. The motion to reconsider will therefore be denied.

Accordingly, upon reconsideration pursuant to the remand of the Second Circuit, the respondent's appeal will be dismissed and the decision of the Immigration Judge will be affirmed.

**ORDER:** The appeal is dismissed.

**FURTHER ORDER:** The respondent's motion to reconsider is denied.

---

[5] We note that the offense of first-degree manslaughter is a lesser included offense of intentional second-degree murder under New York law. *See People v. Biggs*, ___N.E.2d___, 2003 WL 22844430 (N.Y. Dec. 2, 2003) (stating that "manslaughter in the first degree is the same offense as murder in the second degree" for purposes of double jeopardy, because no additional element of proof is required for a first-degree manslaughter conviction under section 125.20(1)).