PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

RODOLFO BEJARANO-URRUTIA,

*Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,

*Respondent.*

No. 04-2270

On Petition for Review of an Order of
the Board of Immigration Appeals.
(A72-752-363)

Argued: May 24, 2005

Decided: July 5, 2005

Before WILKINS, Chief Judge, and NIEMEYER
and SHEDD, Circuit Judges.

Petition granted and remanded by published opinion. Chief Judge
Wilkins wrote the majority opinion, in which Judge Shedd joined.
Judge Niemeyer wrote a dissenting opinion.

## COUNSEL

**ARGUED:** William O. Smith, Richmond, Virginia, for Petitioner.
Michelle Elizabeth Gorden, Senior Litigation Counsel, UNITED
STATES DEPARTMENT OF JUSTICE, Civil Division, Office of
Immigration Litigation, Washington, D.C., for Respondent. **ON
BRIEF:** Peter D. Keisler, Assistant Attorney General, M. Jocelyn

Lopez Wright, Assistant Director, UNITED STATES DEPART-MENT OF JUSTICE, Civil Division, Office of Immigration Litigation, Washington, D.C., for Respondent.

---

**OPINION**

WILKINS, Chief Judge:

Rodolfo Bejarano-Urrutia (Petitioner) petitions for review of a final order of removal. We grant the petition and remand for further proceedings.

I.

Petitioner, a citizen and native of Mexico, legally entered the United States in 1994. After remaining here continuously from that time, in 1998 he became a lawful permanent resident. In 2001, Petitioner was involved in an automobile accident in which the driver of the other vehicle was killed. As a result, he was indicted by a Chesterfield County, Virginia grand jury for aggravated involuntary manslaughter, *see* Va. Code Ann. § 18.2-36.1 (LexisNexis 2004), and for driving under the influence, *see* Va. Code Ann. § 18.2-266 (LexisNexis 2004). Pursuant to a plea agreement, the Government amended the indictment, and Petitioner pleaded guilty to simple involuntary manslaughter in violation of Va. Code Ann. § 18.2-36 (LexisNexis 2004) and to the driving under the influence charge. He was sentenced to 10 years' imprisonment, with eight years suspended.

After being remanded to state custody, Petitioner was served with a notice to appear charging him with removabillity under 8 U.S.C.A. § 1227(a)(2)(A)(iii) (West 1999) for having been convicted of an aggravated felony. Petitioner was subsequently also charged with removability under 8 U.S.C.A. § 1227(a)(2)(A)(i)(I) (West 1999) for having been convicted of a crime involving moral turpitude within five years of his entry into the United States.

Petitioner denied removability and moved to dismiss the removal action. The immigration court granted the motion, and the Govern-

ment appealed. While that appeal was pending, Petitioner completed his prison sentence and was remanded to federal custody. Subsequently, the Board of Immigration Appeals, in a two-to-one decision, reversed the ruling of the immigration court as to Petitioner's removability under 8 U.S.C.A. § 1227(a)(2)(A)(iii) (conviction of an aggravated felony) and entered a final removal order. The Board made no ruling regarding Petitioner's removability under 8 U.S.C.A. § 1227(a)(2)(A)(i)(I).

## II.

Petitioner argues that the Board erred in determining that his conviction for involuntary manslaughter under Va. Code Ann. § 18.2-36 was for an aggravated felony. We agree.

An alien is removable under 8 U.S.C.A. § 1227(a)(2)(A)(iii) if he has been convicted of an aggravated felony after being admitted to this country. The Government maintains that Petitioner's involuntary manslaughter offense was an aggravated felony because it was a crime of violence. *See* 8 U.S.C.A. § 1101(a)(43)(F) (West 1999) (defining "aggravated felony" to include "a crime of violence . . . for which the term of imprisonment [is] at least one year" (internal quotation marks & footnote omitted)). As is relevant here, "crime of violence" means "any . . . offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C.A. § 16(b) (West 2000) (internal quotation marks omitted). In determining whether a crime fits this definition, the court must look to the "*intrinsic* nature of the crime, not to the facts of each individual commission of the offense." *United States v. Aragon*, 983 F.2d 1306, 1312 (4th Cir. 1993); *see Leocal v. Ashcroft*, 125 S. Ct. 377, 381 (2004) (holding that the language of § 16 "requires us to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime"). The crime at issue here, a violation of Va. Code Ann. § 18.2-36, requires the killing of a person as a proximate result of the defendant's reckless disregard for human life. *See Hargrove v. Commonwealth*, 394 S.E.2d 729, 731 (Va. Ct. App. 1990).

The United States Supreme Court recently interpreted § 16(b) in a way that makes plain the correct result in this case:

> [Section 16(b)] simply covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense. The reckless disregard in § 16 relates *not* to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that the use of physical force against another might be required in committing a crime. The classic example is burglary. A burglary would be covered under § 16(b) *not* because the offense can be committed in a generally reckless way or because someone may be injured, but because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime.

*Leocal*, 125 S. Ct. at 383 (footnote omitted).* Indeed, the *Leocal* Court went on to explain that, under this definition of "use," a violation of the Florida DUI statute there at issue was not a § 16(b) crime of violence because "[t]he risk that an accident may occur when an individual drives while intoxicated is simply not the same thing as the risk that the individual may 'use' physical force against another in committing the DUI offense." *Id.* at 383 n.7. For this reason, the Court added that "[i]n no 'ordinary or natural' sense can it be said that a person risks having to 'use' physical force against another person in the course of operating a vehicle while intoxicated and causing injury." *Id.* at 383.

For the same reason, a violation of Va. Code Ann. § 18.2-36—which here was apparently accomplished with the very conduct that the *Leocal* Court explained did not involve the potential "use" of physical force—is not a crime of violence under § 16(b). Although the crime of violating Va. Code Ann. § 18.2-36 intrinsically involves a substantial risk that the defendant's actions will cause physical harm, it does not intrinsically involve a substantial risk that force will be applied "as a means to an end." *Jobson v. Ashcroft*, 326 F.3d 367, 373 (2d Cir. 2003) (employing the same analysis to hold that a New York conviction for involuntary manslaughter was not a crime of violence under § 16(b)).

---

*We note that *Leocal* had not yet been decided when the Board issued its decision.

The Government argues that *Leocal* is not controlling here because the *Leocal* Court explained—in *dictum*—that it was not presented "with the question whether a state or federal offense that requires proof of the *reckless* use of force against a person or property of another qualifies as a crime of violence" since "DUI statutes such as Florida's do not require any mental state with respect to the use of force against another person, thus reaching individuals who were negligent or less." *Leocal*, 125 S. Ct. at 384. The Government points out that a violation of § 18.2-36, on the other hand, does require reckless disregard for human life. *See Gallimore v. Commonwealth*, 436 S.E.2d 421, 424 (Va. 1993). However, it bears repeating that a reckless disregard for human life is distinguishable from a reckless disregard for whether force will need to be used. *See Leocal*, 125 S. Ct. at 383 n.7. Moreover, the conclusion of the *Leocal* Court that "[i]n no 'ordinary or natural' sense can it be said that a person risks having to 'use' physical force against another person in the course of operating a vehicle while intoxicated and causing injury," *id.* at 383, strongly indicates that the result in *Leocal* would have been the same even had a violation of the statute there at issue required recklessness rather than mere negligence. Thus, we conclude that *Leocal* is controlling here.

### III.

In sum, because the Board erred in holding that Petitioner's § 18.2-36 conviction was for an aggravated felony, we grant the petition for review and remand to the Board for further proceedings consistent with this opinion.

*PETITION GRANTED AND REMANDED*

NIEMEYER, Circuit Judge, dissenting:

The Board of Immigration Appeals ordered Rodolfo Bejarano-Urrutia removed to Mexico pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) (providing for the deportation of aliens who are "convicted of an aggravated felony," including a "crime of violence") because Bejarano-Urrutia had been convicted of involuntary manslaughter under Virginia law. Bejarano-Urrutia had pleaded guilty in May 2002 to one count of involuntary manslaughter, in violation of Va. Code

Ann. § 18.2-36, and to one count of driving under the influence, in violation of Va. Code Ann. § 18.2-266. He was sentenced to 11 years' imprisonment with 9 years suspended. Because the involuntary manslaughter charge of which Bejarano-Urrutia was convicted is a crime of violence and therefore an "aggravated felony," I would affirm the decision of the Board.

The majority concludes, employing the categorical approach to determine whether Bejarano-Urrutia was convicted of an "aggravated felony," that involuntary manslaughter under Virginia law is not an aggravated felony because it is not necessarily a crime of violence. It relies on the Supreme Court's recent decision in *Leocal v. Ashcroft*, 125 S. Ct. 377 (2004), and observes that while a violation of Virginia Code § 18.2-36 may "intrinsically involve[ ] a substantial risk that the defendant's actions will cause physical harm, it does not intrinsically involve a substantial risk that force will be applied 'as a means to an end.'" *Ante* at 4 (citation omitted). The majority thus concludes that *Leocal*'s holding that a Florida DUI statute was not intrinsically a crime of violence compels the conclusion that Bejarano-Urrutia's conviction for involuntary manslaughter under Virginia law also was not a conviction of a crime of violence.

I respectfully submit, however, that *Leocal* does not control this case because the Florida statute that was involved in *Leocal* is materially different from the Virginia statute involved here. In *Leocal*, the Supreme Court considered whether violation of a Florida DUI statute categorically constituted an "aggravated felony" — that is, a "crime of violence," 8 U.S.C. § 1101(a)(43)(F), which is defined to involve "the use of physical force against [a] person," 18 U.S.C. § 16(a) — for purposes of deporting an alien under 8 U.S.C. § 1227(a)(2)(A)(iii). Observing that the Florida statute did not have "a *mens rea* component" and required only "a showing of negligence in the operation of a vehicle," *Leocal*, 125 S. Ct. at 380, the Court concluded that the Florida statute was not a crime of violence, *id.* at 382-83. As the Court repeatedly noted, "[t]he Florida statute, while it require[d] proof of causation of injury, [did] not require proof of any particular mental state." *Id.* at 381. A crime of violence, on the other hand, requires "a higher degree of intent than negligent or merely accidental conduct." *Id.* at 382. Making the limit of its holding crystal clear, the Supreme Court stated:

> This case does not present us with the question whether a state or federal offense that requires proof of the *reckless* use of force against a person or property of another qualifies as a crime of violence under 18 U.S.C. § 16.

*Id.* at 384.

Thus, the question before us is whether the Virginia involuntary manslaughter law, under which Bejarano-Urrutia was convicted, is a "crime of violence," as defined by 18 U.S.C. § 16, or a statute like the Florida statute in *Leocal* that criminalized "negligent or merely accidental conduct." *See Leocal*, 125 S. Ct. at 382.

We begin with the statutory definitions. The Immigration and Naturalization Act (the "INA" or "Act") provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). The Act defines an "aggravated felony" as a "crime of violence (as defined in section 16 of Title 18) . . . for which the term of imprisonment [is] at least one year." *Id.* § 1101(a)(43)(F) (footnote omitted). Section 16(a) of Title 18 defines a "crime of violence" as "an offense that has as an element the use . . . of physical force against the person or property of another." Thus an aggravated felony includes a crime of violence, which must have, as an element, the use of physical force against the person or property of another. When the predicate offense for removability under the INA is supplied by state law, we of course look to that State's law to determine whether it has "as an element the use . . . of physical force against the person or property of another."

I agree with the majority that, when looking to state law, we must use a "categorical" approach, under which we look to the generic nature of the offense of conviction rather than the specific conduct of the offender. The categorical approach is dictated by Congress' choice to define the condition of deportation in terms of "convict-[ions]," 8 U.S.C. § 1227(a)(2)(A)(iii), rather than "conduct." *See Taylor v. United States*, 495 U.S. 575, 600-01 (1990). Because Congress has employed similar language in several statutory provisions, the categorical approach applies in a variety of contexts. *See, e.g.*, *Shepard v. United States*, 125 S. Ct. 1254, 1258 (2005) (Armed Career Criminal Act); *Leocal*, 125 S. Ct. at 381 (INA); *Taylor*, 495 U.S. at 600-01

(Armed Career Criminal Act); *United States v. Pierce*, 278 F.3d 282, 286 (4th Cir. 2002) (United States Sentencing Guidelines); *United States v. Aragon*, 983 F.2d 1306, 1312-13 (4th Cir. 1993) (Travel Act). Regardless of whether the statute that relies on the predicate of a prior "conviction" is a Travel Act provision, part of the INA, a sentencing provision, or some other statute, this approach focuses on the "elements and the nature of the offense of conviction, rather than . . . the particular facts relating to the petitioner's crime." *Leocal*, 125 S. Ct. at 381.

In addition to being a faithful interpretation of the statutory language, the categorical approach has the practical advantage of avoiding prolonged and duplicative litigation by forbidding inquiry into facts previously presented and tried. As we explained previously, such an inquiry "would become a series of minitrials for each prior offense, which would be both costly and unreliable." *Pierce*, 278 F.3d at 286; *see also Taylor*, 495 U.S. at 601 ("[T]he practical difficulties and potential unfairness of a factual approach are daunting").

To discern the intrinsic nature of the Virginia involuntary manslaughter statute involved here, we look to the elements that constitute the offense and must be proved to obtain a conviction. First, the prosecutor must prove that the defendant engaged in

> acts of commission or omission of a wanton or wilful nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of his acts.

*Gallimore v. Commonwealth*, 436 S.E.2d 421, 424 (Va. 1993) (quoting *Bell v. Commonwealth*, 195 S.E. 675, 681 (Va. 1938)) (internal quotation marks omitted). Second, the defendant's conduct must have proximately caused the death of another. *Id.* The crime of involuntary manslaughter in Virginia thus encompasses both active commissions and passive omissions. *See Bell*, 195 S.E. at 681; *Kelly v. Commonwealth*, 592 S.E.2d 353, 357-58 (Va. Ct. App. 2004) (affirming conviction for involuntary manslaughter based on the defendant's

omission — i.e. his failure to ensure that his daughter had been removed from her car seat in a closed van).

To qualify as a crime of violence under 18 U.S.C. § 16, Virginia's statute must involve (1) the use against the person or property of another (2) of physical force. Addressing the first element, the *Leocal* Court held that the "use of" physical force "against the person or property of another," *see* 18 U.S.C. § 16(a), requires "a higher degree of intent than negligent or merely accidental conduct," *Leocal*, 125 S. Ct. at 382. *Leocal*'s holding left open the question of whether a mental state of recklessness suffices under 18 U.S.C. § 16. Under the *Leocal* Court's logic, however, it is clear that a crime requiring a *mens rea* of recklessness can be a "crime of violence." That is, the Court explained that to "use [something] against the person . . . of another" is to "actively employ[ ] [something] against another person." *Id.* (emphasis omitted) (internal quotations marks and citations omitted). Unlike a person who accidentally injures another person, a person who acts recklessly in bringing about harm to another is aware of the nature of his conduct and thus can be said to be "actively employ-[ing]" the physical force that results in injury "against another." *See id.*; *see also United States v. Trinidad-Aquino*, 259 F.3d 1140, 1146 (9th Cir. 2001) ("[T]he crime need not be committed purposefully or knowingly, but it must be committed at least recklessly"); *In re Alcantar*, 20 I. & N. Dec. 801, 813 (BIA 1994) ("18 U.S.C. § 16(b) does not require specific intent to do violence. It includes at a minimum reckless behavior . . .").

In short, because Virginia's involuntary manslaughter statute requires a *mens rea* of recklessness, *see Craig v. Commonwealth*, 538 S.E.2d 355, 360 (Va. Ct. App. 2000), it satisfies 18 U.S.C. § 16's requirement that it involve the *use* of physical force *against* the person or property of another.

Once it is established that Bejarano-Urrutia was convicted of a crime with the requisite *mens rea* to involve a "use" of force "against" the person of another, it becomes necessary to address whether the offense of involuntary manslaughter under Virginia law involves the use of "physical force." The answer to that question depends on whether the offender caused the death of another through an act of commission or an act of omission. An act of commission that results

in the death of another will always involve some sort of physical force. A "commission" is the "act of committing, performing, or doing." *Webster's Third New International Dictionary* 457 (Philip Babcock Gove et al. ed., 1993). "Force" is defined as "[p]ower, violence, or pressure directed against a person or thing." *Black's Law Dictionary* 656 (7th ed. 1999). The modifier "physical" narrows the definition to a particular kind of force, that is, "[f]orce consisting in a physical act." *Id.* And, "physical" means "material" or "relating to the body." *Webster's Third New International Dictionary*, *supra*, at 1706. To cause the death of another through an "act . . . of doing" necessarily requires the actor to put into motion some sort of "force" or "pressure" that eventually reaches the "body" of the victim. Thus, it involves "physical force."

An omission, on the other hand, seldom, if ever, will involve physical force since, by definition, an omission is a failure to act. *See Black's Law Dictionary*, *supra*, at 1116 (defining "omission" as "[a] failure to do something"). Because Virginia's definition of involuntary manslaughter encompasses both commissions and omissions, the fact that Bejarano-Urrutia was convicted of involuntary manslaughter does not, without more knowledge, enable us to determine whether he was convicted of a crime of violence — that is, a crime involving physical force.

In such circumstances — where the statute at issue is divisible and "encompasses some acts that are grounds for removal and others that are not" — a court may look beyond the fact of conviction to the *record of conviction* to determine the nature of the offense. *In re Vargas-Sarmiento*, 23 I. & N. Dec. 651, 654 (BIA 2004); *see also Bazan-Reyes v. INS*, 256 F.3d 600, 606 (7th Cir. 2001); *In re Sweetser*, 22 I. & N. Dec. 709, 714-15 (BIA 1999); *cf. Taylor*, 495 U.S. at 602; *United States v. Kirksey*, 138 F.3d 120, 124 (4th Cir. 1998) (interpreting a similar provision under the Sentencing Guidelines to allow examination of the facts stated in the charging document where the "definition of the prior crime of conviction is ambiguous"). The record of conviction includes "the charging document, a plea agreement, a verdict or judgment of conviction, a record of the sentence, or a plea colloquy transcript." *Dickson v. Ashcroft*, 346 F.3d 44, 53 (2d Cir. 2003) (relying on the list of documents that constitute proof of a conviction provided by 8 U.S.C.

§ 1229a(c)(3)(B)); *see also Shepard*, 125 S. Ct. at 1263; *Vargas-Sarmiento*, 23 I. & N. Dec. at 654. Thus, the Supreme Court has noted that when a court subjects a statute to the categorical analysis under the Armed Career Criminal Act ("ACCA") and the statute proves ambiguous, the court may look to the indictment and jury instructions to understand the nature of the predicate offense:

> For example, in a State whose burglary statutes include entry of an automobile [which would not qualify as a predicate under the ACCA] as well as a building [which would qualify as a predicate under the ACCA], if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

*Taylor*, 495 U.S. at 602; *see also Shepard*, 125 S. Ct. at 1259 (applying *Taylor*'s reasoning to guilty pleas).

When we apply this canon of the categorical analysis to the Virginia involuntary manslaughter statute — which can be violated with conduct that either involves the use of physical force or is passive and need not involve the use of physical force — we look to the record of conviction to determine whether the defendant was convicted of a crime of violence involving the use of physical force. In doing so in this case, we need look no further than the charging document on which Bejarano-Urrutia was convicted. The indictment to which he pleaded guilty charged:

> Bejarano[-]Urrutia, on or about July 28, 2001, . . . did unlawfully and feloniously *kill and slay* Sybil Renee McDaniel by negligence so gross, wanton and culpable as to show a reckless disregard of human life . . . .

(Emphasis added).

If the indictment used the word "kill" alone, it might have left open the possibility that Bejarano-Urrutia caused the death of McDaniel

through an omission. By charging him with "slay[ing]" McDaniel, however, the indictment eliminated that possibility because to "slay" means "to deprive of life *by force*" or "put . . . to death *violently*." *Webster's Third New International Dictionary*, *supra*, at 2140 (emphases added). Thus, Bejarano-Urrutia was convicted of a crime involving physical force. This conclusion is fortified also by Bejarano-Urrutia's guilty plea — contained in the same plea agreement — to driving under the influence, in violation of Virginia Code § 18.2-266, which raises the inference that McDaniel's death was caused by a drunk driving incident and therefore by physical force.

Because the established categorical approach reveals that the involuntary manslaughter crime of which Bejarano-Urrutia was charged and convicted was a crime of violence that constitutes aggravated felony under 8 U.S.C. § 1101(a)(43)(F), I would affirm the decision of the Board concluding that Bejarano-Urrutia is removable under 8 U.S.C. § 1227(a)(2)(A)(iii).